J. L. HOPKINS & Co., Respondent, *v.* D. L. SILVERMAN, Doing Business under the Firm Name and Style of D. L. SILVERMAN Co., Appellant.

First Department, January 15, 1932.

*Benjamin Lichterman*, for the appellant.

*William C. Gehring* of counsel [*Paul M. Trainor* with him on the brief; *Melvin G. Palliser*, attorney], for the respondent.

MERRELL, J.   Plaintiff brought this action to recover damages measured by the purchase price paid by plaintiff to defendant for 1,000 pounds of merchandise known as gum myrrh and which plaintiff, after he had paid the purchase price, discovered to be unfit for use and not the character of goods which it had purchased. On December 28, 1928, the defendant wrote plaintiff as follows: " We confirm advising you that we have about 1800 lbs. Gum Myrrh on board the S/S ' Matoppo ' due in New York about the 7th January, which we offered you, subject to being unsold on receipt of your reply, at 25 1/2c per lb. ex dock, Payment, net cash, after goods are released by the Department of Agriculture." On the day following plaintiff wrote defendant as follows: " Please enter our order for 1000 lbs. Gum Myrrh offered by you in your letter of the 28th inst., as arriving on S/S ' Matoppo ' about January 7th, at 25 1/2c per lb., ex dock, payment net cash after goods are released by the Dept. of Agriculture.

" It is necessary for us to get a release on this as promptly as possible and we will look to you to press the matter for inspection and acceptance so as to prevent delay."

This contract was made in the city of New York and the plaintiff believed and understood that the merchandise was to be landed there.   In due time plaintiff was notified that the merchandise was at a pier and the defendant applied as a favor that the defendant be paid for the goods against a general delivery order to prevent the goods going into general order, and accordingly presented to plaintiff a sight draft which plaintiff honored and paid, paying for the merchandise $250.16.   The evidence shows that the merchandise which was delivered was not, in fact, gum myrrh, but was an inferior article of no use whatever to plaintiff.   Plaintiff immediately notified defendant that the merchandise was not up to standard and was, in fact, not gum myrrh, and could not be used, and requested that defendant take it back.   There was correspondence between the parties, but the goods were never taken back by the

defendant, nor was the money paid therefor returned to plaintiff. Sometime thereafter the merchandise was seized by the Federal authorities and condemned and destroyed. A libel was filed against the goods in the United States District Court. The copy of the monition served upon plaintiff was at once forwarded to defendant with a letter asking defendant to take such steps as he deemed necessary. Nothing was done by defendant. Subsequently the government, under an order of the United States District Court, confiscated and destroyed the merchandise after testing the same. Thereupon plaintiff brought the present action, and by the judgment appealed from was awarded the amount paid defendant for the merchandise together with the sum of $99.68 damages, which plaintiff was obliged to incur in order to meet its own obligations to a customer for the gum myrrh which plaintiff had expected to receive from defendant.

The defendant perpetrated a bare-faced fraud upon plaintiff, and would have been liable for damages for fraud, and under the Personal Property Law was liable for the amount paid and the damages sustained. On the appeal to the Appellate Term that court, by a divided court, affirmed the judgment of the Municipal Court.

The contention of the defendant, appellant, is that under this contract all that it was necessary for defendant to show was that the goods in question had been released by the Department of Agriculture, which he asks be construed as meaning, had been passed by that department. The evidence very clearly negatives the claim of defendant that these goods were ever passed by the Department of Agriculture. While it is true that the customs officers allowed the goods to enter the country, it appears from the exhibits in the case and the testimony that the goods were never, in fact, released or passed; that no sample whatever was taken, and that the position of the government was merely that they did not detain the goods in the first instance. The evidence, however, shows that when samples of the goods were taken the goods were condemned and destroyed by the government. Expert evidence was given on the trial in behalf of plaintiff to the effect that goods sold, as were these, under a custom of the trade, were goods which passed the standard set up by the United States Pharmacopœia. The president of plaintiff, a dealer in this commodity for forty years, testified that the commodity which his firm received from the defendant was not gum myrrh, but was an inferior article. Plaintiff's president testified that there was a standard under which gum myrrh was sold as specified in the United States Pharmacopœia, namely, that the alcoholic standard

of the drug should be thirty per cent with an ash standard of four per cent. It appeared that when these goods that were delivered were analyzed they were found to have an alcoholic content of only twenty-five per cent and an ash unsoluble content of eight and sixty-three one-hundredths per cent. The defendant produced at the trial certain documents which he insisted constituted a release by the Department of Agriculture of the goods in question. These documents are somewhat ambiguous. Joseph A. Cummings, an employee of the Department of Agriculture, testified at the trial that his department had control of all foods and drugs imported or shipped in interstate commerce, and that chemists from the New York station of the Department of Agriculture made an analysis of samples of this gum and found the product was deficient in alcohol soluble material and had an excessive quantity of acid and soluble ash, and that the gum myrrh analyzed was not up to the standard of the United States Pharmacopœia; that the documents produced by defendant did not signify the passing of the product by the Department of Agriculture, and that passing the Department of Agriculture requirements in his estimation meant a shipment of goods that met the requirements of the department; that in this case the stamp stated that no sample was taken and "No sample desired," and that left the entire responsibility on the shipper or manufacturer or importer as to whether or not the goods complied with the Food and Drugs Act; ■ that so far as these goods were concerned the department did not prevent their entering; that the department force and funds were limited and it is a physical impossibility for the department to sample every shipment of food and drugs that arrive at various ports of entry during the course of the year; that consequently, whether by reason of rush of work or for any other reason, any number of shipments which are not sampled by the department were allowed to enter, and that this shipment came through without an examination. Cummings further testified on cross-examination that his department did not necessarily make an examination as to the identity of the merchandise, even in a case of that kind; that the government force was not large enough, so that nine out of ten shipments that come in are simply stamped, "No samples desired," so that the Treasury Department may issue its bills for duties or whatever it may be and clear the goods so far as the Treasury Department is concerned; that the stamp upon the goods would not signify that they had been passed by the Department of Agriculture or released by the Department of Agriculture; that no formal release was given.

William E. Martin, sworn as a witness for plaintiff, testified that he had been a drug broker for fourteen years, and that the expression in the contract in suit that payment was to be made after goods were released by the Department of Agriculture meant, as a trade proposition, that the goods must test up to the United States Pharmacopœia in order to pass. Shown the documents whereby defendant claimed that these goods had been released by the Department of Agriculture, Martin testified that these documents were not sufficient to show such release, and that the documents did not show that the goods had been definitely or finally released; that the government had a regular form showing a release when goods had been examined; that the documents presented did not show such release.

We think there was an implied warranty on the part of the defendant as to the quality of the goods. (Pers. Prop. Law, § 96, subds. 1 and 5, added by Laws of 1911, chap. 571.) We think there was here an implied warranty that the goods would be reasonably fit for the purpose for which they were intended and sold. In this case the goods were not as represented by defendant and were not, in fact, gum myrrh, which plaintiff purchased. They had not been approved by the Department of Agriculture and were finally confiscated and destroyed by the government.

It is contended by appellant that plaintiff is seeking a wrong remedy. Under the provisions of section 150 of the Personal Property Law, subdivision 1, clause (d) (added by Laws of 1911, chap. 571), where a breach of warranty has occurred and the merchandise received by the purchaser, the purchaser may offer to return the same and recover back the purchase price paid. This is what plaintiff did. The defendant refused to receive the merchandise back or to return the money paid by plaintiff for the goods. The goods were a complete loss to plaintiff, as they were subsequently confiscated by the government and destroyed. Under subdivision 7 of section 150 of the Personal Property Law (added by Laws of 1911, chap. 571), in case of a breach of warranty of quality, such loss, in the absence of special circumstances showing damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered the warranty. If the goods had been as represented they would have been worth the purchase price which plaintiff paid for the same. As the goods were, as delivered, they were absolutely worthless. Thus, in any event, plaintiff's damage would be what it paid for the goods. By subdivision 6 of section 150 of the Personal Property Law (added by Laws of 1911, chap. 571), plaintiff is entitled to recover any other

damage flowing directly and naturally in the course of events from the breach of warranty. This would embrace the sum of ninety-nine dollars and sixty-eight cents which plaintiff was compelled to pay out in order to obtain goods to meet the demand of a customer whom he expected to serve from the goods purchased of defendant. We think substantial justice was accomplished by the decision of the Municipal Court. This defendant misled plaintiff in representing that the goods were about to arrive at the port of New York on or about January seventh on board the steamship *Matoppo*. The goods did not come to New York, but were landed at Boston, and passed the customs authorities there and were transshipped to New York. When they arrived there they were found by plaintiff not to be what it had bought, but worthless stuff which the government afterwards destroyed. We do not think, under the evidence, these goods were ever released by the Department of Agriculture, and, therefore, plaintiff should be entitled to recover back the amount it paid therefor.

The determination of the Appellate Term should be affirmed, with costs to plaintiff, respondent, against defendant, appellant.

McAvoy and Martin, JJ., concur; Finch, P. J., and Sherman, J., dissent.

Sherman, J. (dissenting). Plaintiff, an importer of drugs, sued defendant, a commission merchant and broker, in the Municipal Court to recover a sum of money paid to defendant as the purchase price for " gum myrrh," then on board a steamship shortly to arrive in the United States, and a small amount of additional damage which plaintiff claims to have suffered. The action appears to be based upon rescission of the contract of purchase, for an alleged breach of guaranty as to quality.

The contract is in the form of an exchange of letters between the parties and called for " payment, net cash, after goods are released by the Department of Agriculture." Upon their release, the merchandise was transferred to plaintiff who paid the purchase price.

Three weeks later, plaintiff complained that the merchandise was of inferior quality and could not be sold as " Standard Grade," whether it " passes the Customs or not." Defendant replied to that letter, and several days later plaintiff again stated dissatisfaction with the goods, announcing at this time that they were not " prime quality Gum Myrrh such as we purchased." A month later, plaintiff wrote another letter of dissatisfaction. About nine months thereafter, plaintiff sent a letter to defendant advising that a libel had been filed against the goods in question. The merchandise described in that libel was later destroyed by govern-

ment officials, the order directing such destruction having been granted on default.

There is no ambiguity in the writings which form the contract. They contain no warranty as to quality. The trier of the facts appears to have implied a warranty of quality, but stated that this was not a sale according to the requirements of the United States Pharmacopœia and held it to call for merchandise which would " pass " the Department of Agriculture. The contract provided no more than that defendant was to be paid after the goods were *released* by the Department of Agriculture. The trial judge, however, took the view that the word " released " imported a governmental approval. This release, however, was merely a condition of payment and not a warranty at all.

I do not agree with the view that the merchandise was shown by the proof to be other than " gum myrrh." The government libel and the order for its destruction so denominate it.

Plaintiff did not prove that the goods had no merchantable quality. Gum myrrh, sold here in the raw state, has, it appears, many uses, external as well as internal, and need not in its raw state conform to the United States Pharmacopœia or standard of the Department of Agriculture. It is noteworthy that the letter in which defendant offered this commodity for sale did not mention any quality or grade, whereas another drug likewise tendered for sale in the same letter was guaranteed to be of " excellent quality  *  *  *  U. S. P." If plaintiff was to receive merchandise of the superior quality claimed upon trial, it should have so specified in the contract. The only representation by the seller was that the goods would be released by the Department of Agriculture. The testimony of the government employee from that department was that it admits merchandise into this country without being United States Pharmacopœia standard and that after it is " released " the department is no longer interested in it. · Plaintiff, in fact, testified on cross-examination that the only condition of the purchase was that the merchandise should pass that department.

Moreover, under section 150 of the Personal Property Law, plaintiff failed to restore the goods to the possession of defendant in rescinding the contract. Instead, the proof is that plaintiff was the moving factor in having the government confiscate and destroy the goods. The quantity destroyed by the government, as described in the libel documents, is less than the amount concededly in plaintiff's possession pursuant to its purchase. Five bags were received by plaintiff. Some of this material was crushed by plaintiff in preparation for milling and some actually ground.

Only two bags in their original state were destroyed by the government. Plaintiff exercised rights of ownership over the product. It may not later reject the merchandise, part of which was so used by it. Under the circumstances, judgment for the amount of the purchase price and the damages claimed cannot be sustained.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs in this court and in the Appellate Term, and the complaint dismissed, with costs.

FINCH, P. J., concurs.

Determination affirmed, with costs.