GUSSIE PERLMUTTER, Respondent, v. BETH DAVID HOSPITAL, Appellant and Third-Party Plaintiff. BLOOD TRANSFUSION ASSOCIATION, Third-Party Defendant.

Argued October 14, 1954; decided December 31, 1954.

*Sidney N. Zipser* for appellant. I. When defendant hospital supplied blood to plaintiff patient for a blood transfusion, the relationship between the hospital and patient was not one of vendor and vendee so as to charge defendant hospital with implied warranties under the Sales Act. (*Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188; *Carlson, Holmes & Bromstad* v. *Stewart & Co.*, 147 Misc. 607; *Cole* v. *Levy*, 212 App. Div. 84; *Maylender* v. *Fulton Co. Gas & Elec. Co.*, 131 Misc. 514; *Agar* v. *Orda*, 264 N. Y. 248; *Glass & Co.* v. *Misroch*, 239 N. Y. 475; *Temple* v. *Keeler*, 238 N. Y. 344; *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Bakal* v. *University Heights Sanitarium*, 277 App. Div. 572, 302 N. Y. 870.) II. The Sales Act was not intended to apply to this case. (*Agar* v. *Orda*, 264 N. Y. 248; *Glass & Co.* v. *Misroch*, 239 N. Y. 475; *Brown & Co.* v. *Darling & Co.*, 238 App. Div. 487; *Bryant* v. *Presbyterian Hosp. in City of N. Y.*, 304 N. Y. 538; *Kaufman* v. *Israel Zion Hosp.*, 183 Misc. 714; *Parker* v. *State of New York*, 280 App. Div. 157; *Bowser & Co.* v. *McCormack*, 230 App. Div. 303; *Fairbank Canning Co.* v. *Metzger*, 118 N. Y. 260; *Condict* v. *Onwood Constr. Co.*, 210 N. Y. 88.) III. The complaint fails to state facts sufficient to constitute a cause of action and the courts below erred in failing to dismiss the complaint pursuant to rules 106 and 112 of the

Rules of Civil Practice. (*May Metropolitan Corp.* v. *May Oil Burner Corp.*, 290 N. Y. 260; *Green* v. *Doniger*, 300 N. Y. 238; *Bolivar* v. *Monnat,* 232 App. Div. 33; *Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125; *Dillon* v. *Rockaway Beach Hosp.*, 284 N. Y. 176; *Bakal* v. *University Heights Sanitarium,* 302 N. Y. 870; *Horden* v. *Salvation Army,* 199 N. Y. 233; *Parker* v. *State of New York,* 280 App. Div. 157; *Hamburger* v. *Cornell Univ.*, 240 N. Y. 328; *Bryant* v. *Presbyterian Hosp. in City of N. Y.*, 304 N. Y. 538.)

*Harold W. Hayman* and *William A. Hyman* for respondent. I. On this motion attacking the legal sufficiency of the complaint, all the material allegations of fact therein must be taken as true. The complaint alleges that defendant sold blood to plaintiff and plaintiff paid defendant therefor. That is a material allegation of ultimate fact and not a conclusion of law. Therefore, there was a sale and the complaint states a good cause of action for breach of the implied warranties of quality which accompanied the sale. (*Green* v. *Doniger,* 300 N. Y. 238; *O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50; *Staten Is. Edison Corp.* v. *Maltbie,* 270 App. Div. 55, 296 N. Y. 374; *de Cordova* v. *Sanville,* 214 N. Y. 662; *Matter of Sears, Roebuck & Co.* v. *McGoldrick,* 279 N. Y. 184; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70; *Race* v. *Krum,* 222 N. Y. 410; *Ryan* v. *Progressive Grocery Stores,* 255 N. Y. 388; *Greco* v. *Kresge Co.*, 277 N. Y. 26.) II. As a matter of law, the transaction between plaintiff and defendant was a sale. (*Temple* v. *Keeler,* 238 N. Y. 344; *Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188; *People* v. *Clair,* 221 N. Y. 108; *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Agar* v. *Orda,* 264 N. Y. 248; *Glass & Co.* v. *Misroch,* 239 N. Y. 475; *Kaufman* v. *Israel Zion Hosp.*, 183 Misc. 714; *Bowser & Co.* v. *McCormack,* 230 App. Div. 303; *Fairbank Canning Co.* v. *Metzger,* 118 N. Y. 260; *Condict* v. *Onward Constr. Co.*, 210 N. Y. 88.) III. There is no public policy which requires the court to hold that the transaction was not a sale and that the implied warranties of section 96 did not accompany the transaction. (*White* v. *Prospect Heights Hosp.*, 278 App. Div. 789; *Necolayff* v. *Genesee Hosp.*, 270 App. Div. 648, 296 N. Y. 936; *Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125;

*Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188; *Sutherland* v. *New York Polyclinic Med. School & Hosp.*, 273 App. Div. 29, 298 N. Y. 682; *Pivar* v. *Manhattan Gen.*, 279 App. Div. 522; *Sheehan* v. *North Country Community Hosp.*, 273 N. Y. 163; *Holtfoth* v. *Rochester Gen. Hosp.*, 304 N. Y. 27.)

FULD, J. This is, in effect, an action to recover damages for personal injuries sustained by plaintiff while a patient in the hospital maintained and operated by defendant. The injuries allegedly resulted from the transfusing of " bad " blood, supplied by the hospital for a price as part of the customary services rendered by the hospital to its patients. The complaint contains no allegations of negligence, but rather seeks recovery upon the theory that the supplying of blood constituted a sale within the Sales Act and that, as a consequence, there attached implied warranties imposed by that statute that the blood was " reasonably fit for [the] purpose " for which required and of " merchantable quality " (Personal Property Law, § 96, subds. 1, 2).

More precisely, the complaint recites that, while plaintiff was receiving medical care and treatment as a patient in defendant hospital — where she was paying for " room and board and the usual hospital facilities * * * and services " — she received a blood transfusion; that the blood used in the transfusion was " sold " by defendant to plaintiff for $60; and that defendant, who knew the purpose for which the blood was to be used and upon whose " skill and judgment " plaintiff " relied ", impliedly warranted that the blood was " fit " for such intended purpose, was of " merchantable quality," was " pure and harmless and contained no injurious substances, agents, viruses, germs or impurities ". However, the complaint continues, the blood was not fit or of merchantable quality and " contained jaundice viruses and injurious substances, agents and impurities," with the result that plaintiff became " afflicted with homologous serum jaundice " or " homologous serum hepatitis ". Damages of $50,000 are sought.

Defendant moved under rules 106 and 112 of the Rules of Civil Practice to dismiss the complaint for insufficiency. The court at Special Term denied the motion; the Appellate Division unanimously affirmed, granted defendant permission to

appeal and certified the question, " Was Special Term correct in denying defendant's motion to dismiss the complaint herein? "

The answer to that question turns upon whether the transaction described in the complaint constitutes a sale under the Sales Act, whether, in other words, there was created a vendor-vendee relationship between defendant and plaintiff.

A hospital is devoted to the care and healing of the sick. Not only does it gather in its wards " a company of skilled physicians and trained nurses " and place their services " at the call of the afflicted " (*Schloendorff* v. *Society of N. Y. Hosp.*, 211 N. Y. 125, 135), but it also offers to patients resorting to the hospital " the benefit of facilities " and equipment, developed through medical science, " that would not otherwise be available." (*Hamburger* v. *Cornell Univ.*, 240 N. Y. 328, 336.) The essence of the contractual relationship between hospital and patient is readily apparent; the patient bargains for, and the hospital agrees to make available, the human skill and physical materiel of medical science to the end that the patient's health be restored.

Such a contract is clearly one for services, and, just as clearly, it is not divisible. Concepts of purchase and sale cannot separately be attached to the healing materials — such as medicines, drugs or, indeed, blood — supplied by the hospital for a price as part of the medical services it offers. That the property or title to certain items of medical material may be transferred, so to speak, from the hospital to the patient during the course of medical treatment does not serve to make each such transaction a sale. " ' Sale ' and ' transfer ' are not synonymous ", and not every transfer of personal property constitutes a sale. (*Halsted* v. *Globe Ind. Co.*, 258 N. Y. 176, 179.) It has long been recognized that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act. (See *Racklin-Fagin Constr. Corp.* v. *Villar*, 156 Misc. 220; *Saugus* v. *B. Perini & Sons, Inc.*, 305 Mass. 403; *Stevens Implement Co.* v. *Hintze*, 92 Utah 264; *Crystal Recreation, Inc.*, v. *Seattle Assn. of Credit Men*, 34 Wn. 2d 553; see, also, 1 Williston on Sales [Rev. ed., 1948] §§ 54–55a, pp. 144–149; Benjamin on Sale [8th ed., 1950] p. 166; 77 C. J. S., Sales, § 2, p. 584;

cf. *Babcock* v. *Nudelman,* 367 Ill. 626.) As Benjamin put it in his work on Sale (*op. cit.,* p. 166), "a contract of sale is not constituted merely by reason that the property in the materials is to be transferred * * *. If they are simply accessory to work and labour, the contract is for work, labour and materials. Such is the case of medicine supplied by a medical man to a patient, or by a farrier to a horse".

Thus, a contract to paint a picture has been held to be a contract for work, labor and services rather than a sale, although the title to the canvas is actually transferred to the customer. (See *Racklin-Fagin Constr. Corp.* v. *Villar, supra,* 156 Misc. 220; *Robinson* v. *Graves* [1935], 1 K. B. 579.) Likewise, where the contract is to construct a highway, the furnishing of gravel, even though a specific price was set for that material, was held not a sale. (See *Saugus* v. *B. Perini & Sons, Inc., supra,* 305 Mass. 403, 404–405.) And an even more apt illustration is afforded by *Babcock* v. *Nudelman* (*supra,* 367 Ill. 626). That case involved the question whether an optometrist, engaged both in prescribing and furnishing eyeglasses, was in the business of "selling tangible personal property within the meaning of the provisions of the Retailers' Occupation Tax act" (p. 627). The Illinois Supreme Court, despite the indisputable fact that eyeglasses are tangible personal property, held that furnishing them was "merely incidental to the services rendered" and not within the statute's coverage (p. 630); in the course of its opinion — and we cull from it solely for its bearing on the problem now before us — the court wrote (pp. 629–630): "If it becomes necessary for a physician to furnish medicine or surgical dressings in effecting a cure, he certainly does not thereby come within the designation of those engaged in a calling which would result in the imposition of a retail tax. The same reasoning applies to dentists even though that calling requires the furnishing of certain inlays, fills, or crowns, or even false teeth, if necessary to a completion of the dental service. * * * The main object and purpose of optometry is to furnish service to one requiring a correction of vision. * * * While it is true that frames are furnished and their price considered in the ultimate attainment of the purpose, it is purely incidental to the main object sought to be accomplished."

While determination, as to whether the essence of a particular contract is for the rendition of services or for the sale of property, may at times be troublesome and vexatious, there is no doubt that the main object sought to be accomplished in this case was the care and treatment of the patient. The supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities in an endeavor to restore plaintiff's health. It was not for blood — or iodine or bandages — for which plaintiff bargained, but the wherewithal of the hospital staff and the availability of hospital facilities to provide whatever medical treatment was considered advisable. The conclusion is evident that the furnishing of blood was only an incidental and very secondary adjunct to the services performed by the hospital and, therefore, was not within the provisions of the Sales Act. The fact that the treatment might have come from a physician, while the blood came from the hospital, is of no operative consequence; it is the transaction, regarded in its entirety, which must determine its nature and character. As long as it involves the medical care and treatment of a patient at a hospital, it is immaterial that it is the doctor who may diagnose and treat and the hospital which may supply facilities and material.

If, however, the court were to stamp as a sale the supplying of blood — or the furnishing of other medical aid — it would mean that the hospital, no matter how careful, no matter that the disease-producing potential in the blood could not possibly be discovered, would be held responsible, virtually as an insurer, if anything were to happen to the patient as a result of " bad " blood. (See, e.g., *Blessington* v. *McCrory Stores Corp.*, 305 N. Y. 140, 146; see, also, 1 Williston, *op. cit.*, §§ 237, 237a.) According to the complaint, the blood administered to plaintiff was " contaminated " with jaundice viruses, with the result that she was afflicted with homologous serum hepatitis or serum jaundice. Informed opinion is at hand that there is today neither a means of detecting the presence of the jaundice-producing agent in the donor's blood nor a practical method of treating the blood to be used for transfusion so that the danger may be eliminated (see, e.g., Wiener, *Medicolegal Aspects of*

*Blood Transfusion, A Report of the Committee on Medicolegal Problems of the American Medical Assn.* [1953]; Portis, *Diseases of the Digestive System* [3d ed., 1953], p. 667; Report on Jaundice Following Administration of Human Serum [1943], Public Health Reports, vol. 58, No. 33, pp. 1233, 1241), but, whether that is so or not, the fact is that, if the transaction were to be deemed a sale, liability would attach irrespective of negligence or other fault. The art of healing frequently calls for a balancing of risks and dangers to a patient. Consequently, if injury results from the course adopted, where no negligence or fault is present, liability should not be imposed upon the institution or agency actually seeking to save or otherwise assist the patient. (Cf., e.g., *Parker* v. *State of New York*, 280 App. Div. 157, motion for leave to appeal denied 304 N. Y. 989.)

Not at all analogous to the case before us is our decision — relied upon by plaintiff — holding that, " where a customer enters a restaurant, receives, eats and pays for food, delivered to him on his order, the transaction is a purchase of goods." (*Temple* v. *Keeler*, 238 N. Y. 344, 346.) While it has been said that a restaurant owner does not sell food, but rather renders a service, the fact is that there is " a sale of what is actually used ". (*Temple* v. *Keeler, supra,* p. 347.) And, indeed, semantics apart and looking at the transaction for what it actually is, there can be no doubt that, when one goes into a restaurant, he does so in order to buy what the restaurant in truth has to sell, namely, food. That is not so, though, when one enters a hospital as a patient; he goes there, not to buy medicines or pills, not to purchase bandages or iodine or serum or blood, but to obtain a course of treatment in the hope of being cured of what ails him.

It follows from the foregoing that the complaint should be dismissed, *unless,* as the court at Special Term believed, we are foreclosed by the allegation that the hospital " sold " the blood to plaintiff. To adopt such a view represents an oversimplification of the case. The sufficiency of the complaint cannot be made to turn on the presence of any particular word or words. It is the totality of the facts themselves which must be examined to determine the complaint's validity, not plaintiff's characterization of them or the conclusion which she seeks to draw from them. (See, e.g., *Greeff* v. *Equitable Life Assur. Soc.,*

160 N. Y. 19, 29; *Red Robin Stores* v. *Rose,* 274 App. Div. 462, 465; cf. *Skinner Bros. Mfg. Co.* v. *Shevlin Eng. Co.,* 231 App. Div. 656, 659, affd. 257 N. Y. 562.) In this case, it is plain that what the complaint alleges and truly describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood to plaintiff for transfusion at a stated sum, as part of, and incidental to, her medical treatment.

Our conclusion that the complaint fails to state a cause of action for breach of implied warranty under the Sales Act leaves untouched the question of defendant's liability for negligence, if any.

The order of the Appellate Division and that of Special Term should be reversed, with costs in all courts, and the matter remitted for further proceedings in accordance with this opinion. The question certified is answered in the negative.

FROESSEL, J. (dissenting). The action is for breach of warranty under section 96 (subds. 1, 2) of the Personal Property Law. In her complaint, plaintiff asserts, among other things, that she was a patient in defendant's hospital; that she agreed to pay, and did pay, for room and board and the *usual* hospital facilities maintained and services supplied by defendant. She also separately alleges that she " purchased " from defendant, and " defendant sold " to her, blood for the purpose of transfusion into her blood stream — to defendant's knowledge — and that she " paid to defendant therefor the sum of $60.00 " — an ordinary transaction of " goods supplied under a * * * sale " (Personal Property Law, § 96).

Although these and related allegations clearly set forth a simple action for breach of warranty (see Civ. Prac. Act, § 241; 1 Abbott's Forms of Pleading [3d ed.], forms 732–734), the majority now hold that the complaint must be dismissed before any evidence is taken, because what it " alleges and truly describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood to plaintiff for transfusion at a stated sum, as part of, and incidental to, her medical treatment ". Aside from the fact that this is not really what the complaint alleges, it should be noted that plaintiff is not suing defendant for the service of injecting the blood into her blood-

stream, but simply for the *sale* of " bad " blood for a separate valuable consideration, over and above the consideration she was paying for " room and board and the usual hospital facilities * * * and services ".

Section 82 (subd. 2) of the Personal Property Law defines a sale as " an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price ". In *Rinaldi* v. *Mohican Co.* (225 N. Y. 70, 73), we stated that " we have no doubt that section 96, expressed as it is in general terms, applies to all sales, including sales of food, and that any rules hitherto applied inconsistent with this section are abolished." Section 156 (subd. 1) of the Personal Property Law provides: "' Buyer ' means a person who buys * * * goods "; "' Seller ' means a person who sells * * * goods "; "' Goods ' include all chattels personal other than things in action and money."

Section 275 of the Civil Practice Act requires that we construe pleadings " liberally " and " with a view to substantial justice between the parties ". And we have held accordingly (*Condon* v. *Associated Hosp. Service,* 287 N. Y. 411; *Wainwright & Page* v. *Burr & McAuley,* 272 N. Y. 130). It is also settled beyond dispute that on a challenge to the legal sufficiency of a complaint, we accept as true its allegations, and any reasonable inference that may be drawn therefrom (*Condon* v. *Associated Hosp. Service, supra; Garvin* v. *Garvin,* 306 N. Y. 118, 120; *Schwartz* v. *Heffernan,* 304 N. Y. 474, 478; *Green* v. *Doniger,* 300 N. Y. 238; *Latham* v. *Father Divine,* 299 N. Y. 22, 26; *Nevins, Inc.,* v. *Kasmach,* 279 N. Y. 323, 325); and if " in any aspect upon the facts stated " plaintiff may recover, the challenge may not be sustained, notwithstanding that the proofs may fall short of establishing the allegations as facts (*Dyer* v. *Broadway Central Bank,* 252 N. Y. 430, 432–433; *Denihan Enterprises, Inc.,* v. *O'Dwyer,* 302 N. Y. 451, 458). The prevailing opinion exempts this case from the operation of these well-established rules.

By decisions of this court, rather than by virtue of any statute, we have held hospitals immune from liability for the negligence of their properly selected physicians and nurses. Formerly, we invoked the theory of implied waiver to exempt charitable hospitals (see *Schloendorff* v. *Society of N. Y. Hosp.,* 211 N. Y. 125,

128, 129; *Hamburger* v. *Cornell Univ.*, 240 N. Y. 328). But in *Phillips* v. *Buffalo Gen. Hosp.* (239 N. Y. 188, 189), we stated that this doctrine " is logically weak ", and in *Sheehan* v. *North Country Community, Hosp.* (273 N. Y. 163) we repudiated the doctrine altogether. Thus now, if a hospital is to be held immune from liability for the medical acts of its physicians and nurses, that immunity must rest on their status as independent contractors as opposed to servants (*Mrachek* v. *Sunshine Biscuit*, 308 N. Y. 116, decided herewith), for a hospital undertakes, not to heal, but merely to supply others who will heal on their own responsibility (*Matter of Bernstein* v. *Beth Israel Hosp.*, 236 N. Y. 268). This rule has sometimes worked great hardship on persons injured, as, for example, *Bryant* v. *Presbyterian Hosp. in City of N. Y.* (304 N. Y. 538), and it should not be extended so as to encompass a sale as here alleged in the face of a positive statute such as section 96 of the Personal Property Law.

Plaintiff is not suing the hospital for any act by a physician, nurse or orderly, but rather for the act of the hospital itself in selling to her for a specific consideration blood containing " injurious substances, agents and impurities ". The doctors and nurses, who constitute the human skill, and for whose negligent medical acts it is immune from liability, had nothing whatever to do with this sale, and therefore the reason underlying the rule granting immunity does not exist here. Indeed, this is recognized by the majority when they concede that plaintiff may have a cause of action for negligence. That being so, by what authority may we withhold from plaintiff the alternative remedy (*Greco* v. *Kresge Co.*, 277 N. Y. 26) provided by section 96 of the Personal Property Law, and particularly where the hospital has a remedy over against the third-party defendant?

We have held that where a person orders food in a restaurant or ice cream in a drugstore, it constitutes a sale to which the Personal Property Law annexes an implied warranty that the food is reasonably fit for consumption (*Temple* v. *Keeler*, 238 N. Y. 344). So it has been held with regard to drugs (*Hopkins & Co.* v. *Silverman*, 234 App. Div. 224). We cannot logically differentiate those situations from the one involved here, at least as a matter of pleading.

In the prevailing opinion it is said that the contract alleged in the complaint is " clearly one for services " and " is not divisible ", for " the patient bargains for, and the hospital agrees to make available, the human skill and physical materiel of medical science to the end that the patient's health be restored "; and that " it is immaterial that it is the doctor who may diagnose and treat and the hospital which may supply facilities and material ". We have had no difficulty whatever in the past in frequently distinguishing between medical and administrative acts, even when performed by the same person, recognizing that the contract is divisible, and, while we have held hospitals immune when they have carefully selected persons supplying the human skill, we have never extended that doctrine to physical material which was bad, as the impure morphine solution " unfit for use " in *Volk* v. *City of New York* (284 N. Y. 279); the defective hot water bag in *Iacono* v. *New York Polyclinic Med. School & Hosp.* (269 App. Div. 955, affd. 296 N. Y. 502); and the defective chair in *Holtfoth* v. *Rochester Gen. Hosp.* (304 N. Y. 27).

The majority also rest their decision in part on the ground that " informed opinion is at hand that there is today neither a means of detecting the presence of the jaundice-producing agent in the donor's blood nor a practical method of treating the blood * * * so that the danger may be eliminated ". Thus they rely upon so-called medical reports which are neither in the record nor even mentioned in the briefs — matter which plaintiff has had no opportunity to rebut either by evidence or by argument — indeed, plaintiff is now prevented from furnishing any evidence whatever.

We think the courts below were clearly correct in stating that we " may not hold as a matter of law that there was no sale without knowing any of the facts relating to the acquisition of the blood by the plaintiff ", and plaintiff, under the allegations of her complaint, should be permitted to present her proofs. We should not, on the very first occasion this question is presented to us, dismiss her complaint without giving her an opportunity to establish its allegations, and thereby further extend, on a mere challenge to a pleadng which must be liberally construed, the rule of immunity applicable to human skill to a duly alleged sale transaction by the hospital itself, in the face

of the provisions of section 96 of the Personal Property Law.

The order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.

LEWIS, Ch. J., DESMOND and VAN VOORHIS, JJ., concur with FULD, J.; FROESSEL, J., dissents in an opinion in which CONWAY and DYE, JJ., concur.

Orders reversed, etc.