**The CURTIS PUBLISHING COMPANY, Plaintiff,**

v.

**Thomas I. SHERIDAN, Jr., Defendant.**

**No. 71 Civ. 3079.**

United States District Court,
S. D. New York.

Dec. 1, 1971.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiff; by Robert A. Meister, Robert E. Denham, New York City, of counsel.

J. Kenneth O'Connor, New York City, for defendant; by L. Kevin Sheridan, New York City, of counsel.

GURFEIN, District Judge.

This is a motion to dismiss and for summary judgment pursuant to Rules 12(b) (6) and 56(b) of the Federal Rules of Civil Procedure.

The following facts are undisputed:

The principal debtor, Commemorative Publications, Inc. ("Commemorative") contracted with The Curtis Publishing Company ("Curtis") on November 18, 1965 for the printing of a book to record the visit of Pope Paul VI to New York City in October 1965.

In consideration for Curtis' agreement to print the book and to extend credit to

Commemorative the defendant executed a guaranty agreement in the sum of $100,000 on November 8, 1965 to secure payment of Commemorative's indebtedness to Curtis. Thereafter, Curtis sent Commemorative invoices for a sum totalling $123,512.56 dated February 16, 1966. Commemorative did not pay. Curtis commenced suit on April 22, 1966 and on March 3, 1967 secured a quasi in rem judgment against Commemorative in the Court of Common Pleas for Philadelphia County, Pennsylvania in the amount of $130,923.25 including interest. That judgment is still unsatisfied. The present action against the defendant-guarantor was commenced on July 9, 1971.

Beyond that, the facts are in dispute.

The defendant maintains that the contract between Curtis and Commemorative was for the sale of goods and that a four-year statute of limitations applies.[1] The plaintiff says that the contract was for work, labor and materials and that the six-year statute of limitations applies.[2] It also contends (1) that since it has already obtained a judgment against the principal debtor, the guarantor may no longer claim that the action is time-barred; and (2) that Sheridan expressly waived any defense other than payment.

Resolution of the statute of limitations question raised by the defendant's motion depends upon the proper characterization of the transaction between Curtis and Commemorative.[3] The Court must decide as an ultimate issue whether Curtis and Commemorative agreed to a contract for the sale of goods or to a contract for work, labor and materials.

Pollock, C. B., writing in Clay v. Yates, 156 Eng.Rep. 1123, 1125 (1856), noted that

> "the true criterion is, whether work is the essence of the contract, or whether it is the materials supplied. My impression is, that in the case of a work of art, whether in gold, silver, marble or plaister, where the application of skill and labour is of the highest description, and the material is of no importance as compared with the labour, the price may be recovered as work, labour and materials. No doubt it is a chattel that was bargained for, and, if delivered, might be recovered as goods sold and delivered, still it may also be recovered as work, labour and materials. Therefore it appears to me that this is properly a contract for work, labour and materials."

In that case a printer was suing for the price of a treatise he had been commissioned to print. The character of the transaction was a crucial question because the agreement was oral. If the contract was for the sale of goods, the Statute of Frauds requiring a writing would deal a fatal blow to the printer's action.

The defendant criticizes the plaintiff's use of cases which take contracts for special manufacture out of the category of contracts of sale. These cases, the defendant argues, reflect an attempt to remove such contracts from the rigorous operation of the Statute of Frauds, which, as formerly read, made no exception for special manufacture.[4] The Statute of Frauds provision of the Uniform Commercial Code adopted by New York and Pennsylvania does make such

---

1. New York and Pennsylvania have adopted § 2–725 of the Uniform Commercial Code. Uniform Commercial Code § 2–725 (McKinney 1964); 12A Pa.Stat.Ann. § 2–725.

2. C.P.L.R. § 213(2) (McKinney 1966); 12 Pa.Stat.Ann. § 31.

3. Curtis does not take issue with the defendant's assertion that the guaranty

agreement is subject to the same statute of limitations as is the underlying contract. McMullen v. Rafferty, 89 N.Y. 456 (1882).

4. Williston, The Law of Sales in the Proposed Uniform Commercial Code, 63 Harv.L.Rev. 561, 575 (1950).

an exception.[5] Therefore, defendant reasons, the need to exclude special manufacture from the category of contracts for the sale of goods no longer exists. But clearly, developments since the days of Clay v. Yates do not signify that much. Not all contracts for special manufacture qualify as contracts for the sale of goods under the Uniform Commercial Code.[6]

As long as the distinction, however arbitrary, exists between classes of contracts the Court must sort out the relevant factors in order to characterize the contract in issue.

This Court, citing Clay v. Yates, *supra,* has found that where the customer furnished the paper stock, the manuscript, artwork, drawings, photographs, linotype composition, cover dies and jackets, a contract to print and bind a book was not a contract of sale within the meaning of the Sales Act. Wm. H. Wise & Co. v. Rand McNally & Co., 195 F.Supp. 621 (S.D.N.Y.1961). It is undisputed that Commemorative "engaged photographers and writers and made all the other necessary preparation for producing this book." (Sheridan Affd. ¶10.) Commemorative "was formed to function as publisher of this book and to hold title to all pictures and text produced in connection with it." (Sheridan Affd. ¶9.)

The paper used in the printing of the book[7] was supplied by Curtis and accounted for approximately one-third the invoiced charges. The defendant argues that the proportionate charge for materials indicates "how central to this transaction was the contemplated transfer of title to goods of substantial value even in their unimproved state." (Defts. Memo at 8.) This Court noted in Wm. H. Wise & Co. v. Rand McNally & Co., *supra,* that a finding of who supplies the materials is a factor to be considered in characterizing the contract; but it is by no means dispositive. 195 F.Supp. at 625 and n. 3. This Court, in dictum, interpreted Clay v. Yates to say "that a contract to print and bind a book, even where the printer provides the paper and other materials, is a contract for work and labor and not a sale." *Id.* at 626.

That interpretation is fair and applicable to this case. The Court must determine the character of a transaction from the totality of the facts. Perlmutter v. Beth David Hospital, 308 N.Y. 100, 107, 123 N.E.2d 792, 796 (1954). Curtis was engaged to print the signatures. The binding was a separate operation done by another firm. Unfortunately, these and other salient and undisputed facts referred to earlier in this opinion form an insufficient basis for determining the extent, if any, to which Curtis did more than just print the signatures for the venture. The defendant Sheridan's affidavit is replete with reference to Curtis' participation in promoting the production of the book. According to that affidavit, of the three people who conceived the venture, two were the owners and officers of a firm that was an exclusive New York sales representative for Curtis (¶4). Curtis allegedly was to provide financing for the book. Curtis would pay the Archdiocese of New York a percentage of the book's gross sales and would give to the Archdiocese final control over the pic-

5. Uniform Commercial Code § 2–201(3) (a) (McKinney 1964); 12A Pa.Stat. Ann. § 2–201(3) (a).

6. See Duesenberg & King, Sales and Bulk Transfers Under the Uniform Commercial Code § 2.02 [4], n. 28 (1966).

7. Curtis actually printed copies of a signature, a "large sheet printed with four or a multiple of four pages. When folded it becomes a section of the book." The American Heritage Dictionary of the English Language, 1204 (1969). The signatures were sent to another firm for binding. The stipulation referred to earlier indicates that Commemorative was separately indebted to the binder in the amount of $30,846 50 plus interest (Stip. ¶ First).

tures and text in return for the assistance and cooperation of the Archdiocese (¶7; see ¶11). The relationship between Commemorative, the middlemen, Curtis, and the defendant Sheridan is not clear from the papers presented on the motion. The contract itself is made out from correspondence between the firms involved.

Because matters essential to a characterization of the contract are not beyond dispute as presented by the motion papers, the Court denies the defendant's motion to dismiss and for summary judgment.[8]

So ordered.

8. Since the action is not dismissed the assertions of the plaintiff that its Pennsylvania judgment destroys the defense of the statute and that, in any event, it has been waived must similarly await trial.