PER CURIAM.
The State of Alabama Department of Revenue entered a final tax assessment for sales taxes pursuant to Title 51, Section 629(25), Code of Alabama 1940 (Recomp. 1958), against the taxpayer. The taxpayer appealed to the Circuit Court of Montgomery County which reversed the final assessment, holding that no sales taxes were owed. The State appeals.
Industrial Uniform Services, Inc., the taxpayer, is engaged primarily in the business of renting and cleaning industrial uniforms. The taxpayer provides uniforms to its leasing customers and launders these uniforms when they become soiled. The fee charged the customer covers both the rental and the cleaning of the uniforms. Taxpayer purchases the uniforms used in its leasing business at wholesale and therefore pays no sales tax thereon, but does pay a tax under the Alabama Lease Tax Law, Title 51, Section 629(22), Code of Alabama 1940 (Recomp. 1958) (Supp.1973), each time a uniform is leased.
Prior to the delivery of the leased uniforms, the taxpayer’s customers are required to sign an agreement to replace any leased uniform not returned to the taxpayer. Whenever one of the taxpayer’s lease customers loses, misplaces, or fails for any other reason to return the same number of items leased, the customer is charged for the replacement cost of the items not returned. The replacement cost is based on a depreciated value of the garment at the time it is lost. Monies received from lessees for missing garments are kept in a separate account and the funds are used to replace the items not returned by the customer. The replacement items go back into inventory to be rented again and at that time are again subject to the lease tax. Monies received and put into the replacement fund constitute less than one percent of the taxpayer’s business, and these are the monies which provided the basis for the assessment of the sales tax.
Although taxpayer’s primary business is leasing uniforms, it also sells new uniforms. The taxpayer charges the customer a sales tax and remits the tax collected to the State. A customer may not purchase a uniform it has previously leased at the depreciated value charged for replacement.
Although the taxpayer charges its customers for leased uniforms not returned, it is not always successful in collecting the amount charged. Nor does the taxpayer charge the replacement cost to all its customers in every instance of loss. If a customer later returns a misplaced uniform, taxpayer refunds the money paid to replace the item.
The State of Alabama Department of Revenue determined that the payment of the replacement cost for missing uniforms made by leasing customers to the taxpayer constitutes a sales transaction and entered a final assessment for the sales tax due and owing under Title 51, Section 629(25), supra, in the amount of $2,882.13. Title 51, Section 629(25) provides in pertinent part:
“. . . [PJrovided further, that a sale of tangible personal property previously purchased at wholesale for the purpose of leasing or renting under a transaction subject to the privilege or license tax levied in this article shall be deemed to be a ‘retail sale’ or a ‘sale at retail’ for *113 the purpose of administering [section 786(2) of this title] . . . regardless of whether such sale is to the person who theretofore leased or rented the said tangible property or to some other person;

The Circuit Court of Montgomery County found that taxpayer is engaged in a service business, and that the service of providing and cleaning uniforms predominates the transfer of personal property which results when a customer pays for the missing uniform. Relying on the rule enunciated in Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792, 794 (1954), that:
“. . . [W]hen service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale . . .,”
the trial court concluded the transfer in question is not a sale and set aside the assessment.
The State contends error in the reliance of the trial court upon the rule of Perlmutter v. Beth David Hospital, supra. It insists that the rule of Perlmutter was rejected in our case of State v. Community Blood & Plasma Service, Inc., 48 Ala.App. 658, 267 So.2d 176 (1972).
In response, we first say that it is unnecessary to our decision here to respond to the contention as to the decision in State v. Community Blood & Plasma Service, Inc., supra. That case is not appropriate to the facts of this case, nor is the rule of Perl-mutter. There is nothing resembling the transfer of personal property incidental to the performance of a service in this case as was present in Perlmutter and to an extent in State v. Community Blood & Plasma Service, Inc., supra. Though the trial court erroneously relied upon Perlmutter in reaching its decision, it nevertheless reached the correct decision. The entry of a correct judgment for an erroneous reason is not ground for reversal. Tiger Motor Co. v. McMurtry, 284 Ala. 283, 224 So.2d 638 (1969).
The contention by the State that the facts establish a sale within the meaning of Sec. 629(25) is also not acceptable. The charging of the value of the lost or destroyed uniforms to the leasing customer is not a sale. It is nothing more than an obligation of payment arising from the contract of lease. It permits the lessor to recover its capital investment upon the loss of the leased property. The money thus recovered is reinvested in additional uniforms to be leased and lease tax is paid thereon as required by Sec. 629(22). There was simply no sale under Title 51, Sec. 629(25).
The other issue argued in brief by State concerns the admission into evidence of the following question:
“MR. REYNOLDS: Well, let me ask one other question. The money that you receive for lost, stolen or misplaced merchandise, that is incidental to the fact that you have been leasing this uniform and paying a lease tax over a period of time.
“MR. BRECKENRIDGE: We would object to that.
“THE COURT: I think that is a fair question. That is where he got the money, as I understand it, for replacement.
“A. Yes.”
The State’s contention is that the question posed to the witness called for a conclusion of law and was thereby invasive of the court’s prerogative. The answer led the court to an erroneous view of the facts which unfairly colored its judgment on the issues and therefore the court’s judgment should be reversed.
We think the trial court viewed the question differently than does the State. The trial court had just heard questions and answers concerning the method used for obtaining the replacement costs from the lessees and for what purpose the monies obtained from that source were to be used. We believe the trial judge was more concerned with the small amount of monies derived from collecting a replacement fee, compared with the overall revenues from the leasing business than it was with *114 whether the uniform replacement cost was incidental to the uniform leasing service rendered by taxpayer. This conclusion is supported by the words of the trial judge: “That is where he got the money, as I understand it, for replacement.” In this context the question is not invasive of the trial court’s domain and would not have caused an erroneous view of the evidence.
Notwithstanding this view of the controversy, we do not believe that the State was prejudiced by the above question and answer. There was evidence, unobjected to, in the record upon which the trial court could have based its finding that the collection of a replacement fee was incidental to the leasing service. In other words, the trial court, in the absence of the objected to evidence, would not have been required to find that the replacement fee was required by the contract as opposed to being an incident to the leasing service because of the absence of evidence to support the “incidental to service” theory. We therefore, conclude that the trial court did not preju-dicially err in allowing into evidence the objected to question and answer.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.
BRADLEY, J., concurs in the result.