Fuchsberg, J.
(dissenting). In this personal injury action, sounding in the main in strict liability and breach of warranty[1] for, among other things, the “distribution” of an allegedly defective product, the Appellate Division, unaccountably to me on the facts here, has reversed Special Term’s denial of defendant’s motion for summary judgment and, by granting the motion, denied plaintiff her right to trial. To compound the error, its opinion bespeaks what, in this context, is, at one and the same time, an inadmissibly narrow definition of a sale and an overly broad conceptualization of what constitutes a hybrid sales-service transaction. To say the least, then, to let this decision stand is to confuse doctrine which the common law has steadily developed in this area of law for the last half century. Putting aside then the merits of this particular case, whose denouement in any event would have to await resolution at trial of other issues, including whether the product here indeed was defective and whether the defect proximately produced the injuries, I believe the principles at stake deserve expression.
The facts on which the summary judgment motion was submitted, largely garnered by interrogatory and deposition,[2] are as follows:
*842 The plaintiff, an elderly woman, donned a new pair of slippers she had received during a visit to her son’s home. On their first wearing, as she stepped from a carpeted bedroom into a dining area whose dry and unobstructed flooring was made of vinyl tiles such as “would normally be in a kitchen and dining area”, she unexpectedly slipped and fell, as a result of which she sustained injuries which included a crushed vertebra and multiple fractures of an arm. According to a United States Testing Company report, which forms part of the record, standard tests of the type performed by the flooring industry disclosed that, when applied to vinyl, linoleum or asbestos tile, the material of which the slipper soles, which were rigid, were made, carried a dangerously low “static coefficient of friction”.[3] At this stage at least, to this the defendant offered no refutation.
The slippers, which bore the defendant’s logo KLM, had been handed to the son by a stewardess during a transatlantic business flight he had taken from Amsterdam to New York on defendant’s airline. Along with other articles, including, for instance, a Delft-type china bottle of liqueur, they were given to first-class passengers; except as it may have entered into fixing the first-class fare (far larger than that for other passengers), no separate charge was requested. The slippers, whose substantial nature indicated that they were not single-use throwaways, came wrapped in cellophane and were not expected to be returned to the airline. As plaintiff’s discovery disclosed, while the defendant had not manufactured the slippers directly, they were made in Korea according to its own specifications. The son, who did not change his footwear on the plane, took the slippers home, where they remained unopened until they were turned over to his mother.
In seeking summary judgment, defendant claimed that it was decisive that “no additional money was paid for the slippers that were given to [the son] by a KLM stewardess” *843 and that “it cannot be liable * * * as a matter of law in that it was not the manufacturer of the slippers, did not sell the slippers, but merely gave [them] away free as an incident to the air transportation services it provided”. Special Term, in part explicitly and in part implicitly, rejected both arguments.[4]1 respectfully suggest the Appellate Division should have done the same.
Preliminarily, I note that, though both courts below broadsweepingly referred to the action as though it were one in strict products liability alone, the pleadings, as already indicated, also expressly speak to breach of warranty and, arguably, if liberally construed, to negligence as well. This oversight is especially troublesome because, in this area of litigation, pleading (and substantive) categorization has been so beset by a tendency to overlap, that in the past we have thought it worthwhile to comment that “it may be open to a particular plaintiff to base his case on contract liability or negligence or strict products liability, or on some combination thereof” (Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 400, esp at p 402, n 2).
This in mind, it is also to be observed that it is long past the time when, for these purposes, the term “sale” may be confined to its literal meaning, or that responsibility for a defective product moves only from its “manufacturer” to those with whom it deals directly. For the assault on the “citadel of privity” of which Cardozo wrote so classically not only has proceeded apace but, indeed, has scaled the ramparts.[5]
As a case of national import has told the tale, “[w]ith the advent of mass marketing, the manufacturer became remote from the purchaser, sales were accomplished through intermediaries, and the demand for the product was created by advertising media. In such an economy it became *844 obvious that the consumer was the person being cultivated. Manifestly, the connotation of‘consumer’ was broader than that of buyer” (Henningsen v Bloomfield Motors, 32 NJ 358, 379; see, also, Prosser, Fall of the Citadel, 50 Minn L Rev 791; Restatement, Torts 2d, § 402 A, subd [1], par [a]).
Consistently, on the New York legal scene, a breach of warranty came to be recognized, as Judge Desmond summarized it for our court, as “not only a violation of the sales contract out of which the warranty arises but [as] a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer” (emphasis supplied; Goldberg v Kollsman Instrument Corp., 12 NY2d 432, 436).
Thus, it is immaterial to this case that the defendant itself did not make the slippers in question or that it did not deal directly with the mother. It was enough if, as the complaint alleges, the defendant “distributed” them and that plaintiff, here not very remotely, became their consumer.
That the distribution was in the channels of commerce also cannot be gainsaid, certainly not as a matter of law. The defendant is not a charitable organization, handing out gifts per se. Without belaboring the point, for the transaction to have been commercial in character there needed to be no separate consideration for the slippers or the other additional items. These the airline furnished in some part, even if small, to persuade passengers to pay the first-class fare, in this case $1,632.50, double or more than that charged other passengers for the self-same passage. And it appears equally obvious that the logo on the slippers, a repeated reminder to its passengers, members of their families or others to whom they might be expected to be passed along, was a familiar exploitation of a potential advertising medium for promoting KLM’s business.
Equally to be rejected is defendant’s argument that the distribution of the slippers was “wholly incidental to its basic service provided, i.e., international air transportation”. Relying largely on Milau Assoc. v North Ave. Dev. *845 Corp. (42 NY2d 482), a case in which this court upheld a Trial Judge’s refusal to charge on a theory of implied warranty of fitness for use when a pipe, which had been laid down under a contract “to design and put together a sprinkler system tailored to the needs of commercial tenants”, of which the plaintiff there was one, burst and damaged plaintiff’s merchandise. But the furnishing of the pipe in Milau was an essential part of a hybrid sale service, which “could not in logic or common sense be separated” (id., at p 486), so that, without it, the service of designing and installing a sprinkler system could not have taken place. Here, in clear contrast, the slippers were neither a necessary nor unavoidable ingredient of the transportation.
The distinction is underlined by a careful reading of Perlmutter v Beth David Hosp. (308 NY 100), a case of which Milau, in its far different setting, took account. Perlmutter, a suit brought to recover for injuries sustained by a hospital patient because the blood used in a transfusion contained hepatitis-producing viruses, was a policy-laden decision, expressly responsive to the fact that blood transfusions are important, indeed lifesaving, aspects of medical care and that the presence of such impurities, at least at that time, was scientifically undetectable (Perlmutter v Beth David Hosp., supra, at pp 106-107).[6] Even so, Perlmutter stressed that the blood transfused was not merely incidental to the medical care and treatment of which its transfusion would be a part. Without blood there simply would be no transfusion. To quote Perlmutter, the rendition of medical care and the furnishing of blood in connection with such care are “not divisible”, a description totally inappropriate to the almost souvenir-like presentation of the slippers in the case before us now.
*846 For all these reasons, defendant’s motion for summary judgment should have been denied and the case permitted to proceed to trial.
Order affirmed, etc.

. Though pleaded somewhat generally, these theories must be taken as encompassed within the complaint’s allegation that the conduct of the defendant, inter alia, has caused it to “become strictly liable to plaintiff” and that it had “breached express and implied warranties”. It also alleged “actionable misrepresentations”. These, according to the bill of particulars, included failure to give “warning to potential users that [the slippers] were unsafe under the conditions that the plaintiff used them” and that the defendant “impliedly warranted that the slippers were fit for ordinary, everyday use, and they were fit for use on floors common to residences”.

. In opposing defendant’s summary judgment motion, plaintiff asserted that, while her witnesses had been deposed, defendant had succeeded in delaying its own deposition. As a consequence, she prudently requested that, if the court were to seriously contemplate granting defendant’s motion, it defer the matter until discovery was completed. Because Special Term denied the motion on its merits, it, of course, became unnecessary for Special Term to do so. For its part, the Appellate Division never considered this alternative.

. The detailed report advises that any value below 0.5 has “some measure” of hazard to one who wears such slippers and that, two series of tests having been run, the first produced values of only 0.2, 0.19, 0.17 and 0.17 for an average of 0.185, while the second produced 0.16, 0.15, 0.18 and 0.17 for an average of but 0.165.

. Plaintiff also cross-moved for leave to amend her complaint to increase the prayer in its ad damnum, clause and, without altering its substantive assertions, to specifically include a negligence theory (see CPLR 3025, subd [b]). This motion (made at a time when Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, had not yet been decided) was denied. Be that as it may, because, for practical purposes, the majority’s disposition of the defendant’s appeal would render the cross appeal academic, I do not treat with it.

. (See Ultramares Corp. v Touche, 255 NY 170, 180.)

. The policy component was so dominant that the Perlmutter holding has since been codified by the Legislature, notably only as to blood cases (Public Health Law, § 580, subd 4). No doubt, this reinforcement stemmed from the fact that, dehors policy, scholars had expressed concern that unless Perlmutter was narrowly construed, the sales-service dichotomy by which it rationalized its decision might be permitted to extrapolate into less justifiable circumstances (e.g., Farnsworth, Implied Warranties of Quality in Non-Sales Cases, 57 Col L Rev 653, 660-665; Note, 103 U of Pa L Rev 833-836; White and Summers, Uniform Commercial Code [2d ed], § 9-6, at pp 348-349; see, also, Cunningham v MacNeal Mem. Hosp., 47 Ill 2d 443).