OPINION OF THE COURT
Ira B. Harkavy, J.
Plaintiff had the misfortune of purchasing a 1975 Ford Grenada on February 3,1982, from a used car dealer. The car caused him much grief from then on. He would have been best off disposing of the car as soon as he bought it.
On July 11, 1982, while plaintiff was driving his car in Queens, the car stopped operating. Plaintiff called the A.A.A., which towed the car to defendant’s service station.
Despite the fact that defendant’s invoice contains a statement “7/13/82 2:30 P.M. * * * Customer is abusive and vulgar and states he doesn’t trust us”, the parties entered into an agreement pursuant to which defendant agreed to install a used engine; transfer the intake manifold; install a new timing chain; adjust upper steel gear; install new spark plugs, air and gas filters; set emission controls so that they are working to specifications; road test. The charges were labor $300, parts $810.70, oil $9.95, tax $97.45; total $1,213.10. The words “90 day warranty” are written next to “1 used engine” on the estimate, and “90 day guarantee” appears on the center portion, final invoice.
*222 After much delay, the work was completed and the car was turned over to the plaintiff on August 13, 1982, at approximately 8:00 p.m. Plaintiff testified that defendant through one of its employees confirmed the 90-day guarantee and wrote the words “90 day guarantee” on the invoice in order to conform it to the estimate.
Plaintiff took the car out of the service station and started driving towards Shea Stadium where he intended to hear a rock concert. He was spared this fate when 20 minutes later and three miles away from defendant’s station, and prior to plaintiff stopping the car, a fire started in the car’s motor compartment. The fire was easily extinguished by the New York City Fire Department, but the car was again nonoperationable. The car was towed to defendant’s service station and, thereafter, months later, it was towed to plaintiff’s home, where the car sits idle, rusting away.
Plaintiff commenced this action for the value of the car and his expenses, totaling approximately $7,500. His action was based both on the theory of negligence and of breach of warranty. Plaintiff brought in a witness who is employed by the New York Transit Authority as a bus mechanic, who testified that when he inspected the motor compartment in November, 1983, he saw signs of a fire in the area where the defendants had connected the balance of the motor to the engine. He thought the cause of the fire was sloppy work by defendant. He further testified that a new engine, new carburetor, new wiring and a new distributor cap and new emission controls were necessary to restore the motor.
Defendant disclaims all responsibility claiming that the transaction was a service contract between the parties. They claim that where a service contract predominates and the transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the terms of the Uniform Commercial Code and the implied warranties do not apply. (Perlmutter v Beth David Hosp., 308 NY 100.) However, plaintiff does not rely upon the implied warranties. Plaintiff relies upon an express 90-day warranty of the engine as set forth on both the estimate and the invoice. It also relies upon a claim of negligence on the part of the defendant.
*223 Plaintiff relied upon the expertise of the defendant who held themselves out to be expert automobile repair service station mechanics.. It is expected that those who hold themselves out as experts providing a service, will do a reasonable job in a workmanlike manner. (Lunn v Silfies, 106 Misc 2d 41.) The motor compartment of the plaintiff’s car in the vicinity of the engine installed by the defendant caught on fire. The fire began shortly after the plaintiff started driving his car. He had not even reached his first destination. This circumstance leads the court to believe that the repair was not made in a workmanlike manner. The installation that defendant warranted for 90 days was not done properly.
It must be assumed that the words “90 day warranty” on the estimate and “90 day guarantee” on the invoice were not placed there for decoration. They must have some meaning. The only meaning that they could have is that if there was any problem with the engine that the defendants would make good the repairs. Section 398-a of the Vehicle and Traffic Law states: “The purposes of this article [art 12-A] are to further highway safety by promoting the proper and efficient repair of malfunctioning or disabled motor vehicles and to protect the consumers of this state from dishonest, deceptive and fraudulent practices in the repair of such motor vehicles * * * That further, the purpose of this article is to protect the motoring public from improper repairs made to its vehicles to set standards for quality repairs to be made to motor vehicles for fair and reasonable fees and to eliminate unqualified automotive repair shops from engaging in the business of automotive repair to malfunctioning dr disabled vehicles.” Defendant was required by law to make a repair of good quality. (Matter of Tobey v Melton, 74 AD2d 708.) Defendant failed to make a good quality repair as seen by the fact that the motor compartment in the vicinity of the engine caught fire almost as soon as the car left defendant’s repair shop.
Defendant’s action was a breach of its express warranty and in violation of the public policy of the State of New York as set forth in article 12-A (§ 398-a et seq.) of the Vehicle and Traffic Law, more commonly known as the Motor Vehicle Repair Shop Registration Act.
*224 The car body is still in the same condition as when the car was brought into the service station. Therefore, plaintiff’s damages are the cost of the installation of a replacement motor and/or the defendant returning to the plaintiff the amount paid for the repairs, in the sum of $1,213.10, plus the towing charge of $94.33.
Judgment for the plaintiff in the sum of $1,307.43 with interest from August 13, 1982.