402 P.2d 584

**Charles R. WHITEHURST and Lucille Whitehurst, husband and wife, Appellants,**

**v.**

**The AMERICAN NATIONAL RED CROSS, a Federal corporation, Appellee.***

**2 CA–CIV 29.**

Court of Appeals of Arizona.

June 9, 1965.

Rehearing Denied July 14, 1965.

Review Denied Sept. 21, 1965.

Rees, Estes & Browning, Tucson, of counsel, Paul G. Rees, Jr., Tucson, for appellants.

May & Dees, Tucson, of counsel, Robert A. May, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a summary judgment for the defendant, The American National Red Cross, in an action by which the plaintiffs, Charles R. Whitehurst and wife, Lucille Whitehurst, sought to recover damages for the injuries sustained by Lucille Whitehurst when she contracted the disease of homologous serum hepatitis allegedly resulting from the transfusion of impure whole blood supplied by the Southern Arizona Regional Blood Center, an agency of the defendant. The claim is predicated

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7588. The matter was referred to this court pursuant to § 12–120.23 A.R.S.

upon a breach of implied warranty upon the theory that the furnishing of blood constituted a sale within the Uniform Sales Act.

The facts pertinent to this appeal are as follows.

Mrs. Whitehurst entered Tucson Medical Center Hospital for major abdominal surgery in August 1958. On August 19, 1958, following the operation, she went into shock and it was determined by her physician that she was bleeding internally. To save her life the physician ordered that a series of transfusions of whole blood be given her, of which she received a total of nine pints. It is from these transfusions of blood that the plaintiffs contend that Mrs. Whitehurst contracted homologous serum hepatitis.

Included in the itemized bill of the hospital, the plaintiffs were charged by Tucson Medical Center $5.20 for each pint of blood received by Mrs. Whitehurst, $4.95 of which was reimbursed to the defendant Red Cross and 25 cents to the hospital. The agreement between Tucson Medical Center and Southern Arizona Regional Blood Center [Exhibit A] discloses that:

"A. The Red Cross Blood Program agrees to supply the total blood needs of Tucson Medical Center Hospital insofar as it is possible, * * *

*  *  *  *  *  *

"D. Delivery will be on a routine basis upon receipt of orders  * * *

"E. The hospital agrees to reimburse the Southern Arizona Regional Blood Center for part of the operating cost for the collection, processing and distribution of civilian blood, amounting to a total of $4.95 per unit for whole blood used,  * * *

*  *  *  *  *  *

"H. No charge will be made either by the hospital or by any member of the medical staff to the recipient for the blood and the blood products them-

selves which are furnished through the Red Cross Blood Program.

*  *  *  *  *  *

"J. All blood remains under the jurisdiction of the Red Cross until actually used * * *"

It is undisputed that attached to each bottle of whole blood furnished by the Red Cross is the following statement printed on the label:

"Despite careful selection of donors, this blood may contain the virus of homologous serum hepatitis."

It is noted that the action brought by the plaintiffs in the lower court was against the hospital for administering the alleged unwholesome blood and The American National Red Cross as supplier. The complaint sounded in both negligence and warranty. Summary judgment was entered by the trial court in favor of both defendants. This appeal is directed solely against the judgment entered in favor of defendant, The American National Red Cross, and at time of oral arguments, plaintiffs abandoned their contention that there was any case in negligence against the appellee, admitting that under the present state of science there is no practicable way to determine whether whole blood taken for transfusion carries homologous serum hepatitis.

In determining whether the trial court was correct in granting summary judgment in favor of the defendant, we must answer the question of whether the furnishing of blood by the defendant was a "sale."

The plaintiffs predicate liability of the defendant upon the theory of breach of warranty of merchantable quality, which warranty was allegedly breached by the "sale" of impure blood. The defendant asserts that the furnishing of this blood is the rendition of a service rather than a sale.

Relatively few appellate courts have had the occasion to review serum hepatitis transfusion cases. Courts have thus far uniformly held that in a blood transfusion case service predominates, and that extra

charge for blood is not indicative of a sale but is merely an incidental feature of the services rendered. Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 [N.Y.Ct. of Appeals 1954]; Hidy v. State, 207 Misc. 207, 137 N.Y.S.2d 334 [1955]; Gile v. Kennewick Public Hospital District, 48 Wash.2d 774, 296 P.2d 662, 59 A.L.R.2d 761 [1956]; Dibblee v. Dr. W. H. Groves Latter-Day Saints Hospital, 12 Utah 2d 241, 364 P.2d 1085 [1961]; Koenig v. Milwaukee Blood Center, Inc., 23 Wis. 324, 127 N.W.2d 50 [1964]; Sloneker v. St. Joseph's Hospital, 233 F.Supp. 105 [Dist. Ct.Colo.1964]; Annotation—159 A.L.R.2d 777. However, this view is not without strong dissent. See the dissent in Perlmutter v. Beth David Hospital, supra; 69 Harv. L.Rev. 391 [1955]; 29 St. John's L.Rev. 305 [1955]; 103 U.Pa.L.Rev. 833 [1955]; 42 Minn.L.Rev. 640 [1958]; and 37 Notre Dame Law. 565 [1962].

In their brief, plaintiffs attempt to distinguish these cases, in that a suit against the hospital rather than a suit against the supplier is the subject of most of such cases. Since briefs were filed herein, the case of Balkowitsch v. Minneapolis War Memorial Blood Bank, 132 N.W.2d 805 [Minn.1965], has been decided. That case involved an action against a regional blood bank of The American Red Cross to recover damages for personal injuries sustained when she contracted serum hepatitis from a transfusion of impure blood supplied by the defendant. The plaintiff's complaint alleged breach of warranty against the defendant for the "sale" of blood. In holding that the furnishing of the allegedly infected blood by the defendant was not a sale, the Supreme Court of Minnesota said:

> " * * * We agree with those courts which hold that the furnishing of blood is more in the nature of a service than in the sale of goods. It is our view that the law expressed in the Perlmutter case applies here." 132 N.W.2d 805, 810.

In determining whether there is any difference in the applicability of the Perlmut-ter doctrine when suit is against a blood bank instead of a hospital, the court in the Balkowitsch case said:

> " * * * But we cannot concede that defendant, which is a nonprofit corporation, should be treated differently than a hospital or that it should be characterized as a commercial business which offers its products for sale in the market place in competition with others for the sole motive of making a profit. The acts performed by the hospital in the Perlmutter case are not so unrelated to those performed by the defendant in the case before us as to justify a different result." 132 N.W.2d 805, 810.

This court is of the opinion that the facts of the present case establish very clearly that the furnishing of the blood by the defendant to Mrs. Whitehurst was not a sale from which an action for breach of implied warranty will lie. First of all, the agreement between Southern Arizona Regional Blood Center and Tucson Medical Hospital reads that no charge for the blood was to be made to the recipient of the blood. Perhaps more important is the fact that the sum of $4.95 which was reimbursed to the defendant's agent is obviously sufficient to pay for only a part of the operating cost for the collection, processing and distribution of the blood. People who receive blood from the Red Cross know that there is a "gift" involved—not a "sale." This is of the very essence of the transaction under consideration and this court believes that it would be a distortion thereof to append thereto warranties which the law imposes upon sales in the commercial world.

Concluding as we do, that the furnishing of the blood by the defendant, The American National Red Cross, to the plaintiff is a service and not a sale, it is unnecessary to consider or discuss the policy aspects which are mentioned in the Perlmutter case, in Frumer & Friedman in their treatise on Products Liability, Vol. I, § 16.03 [4], p. 385, and in some of the other decisions cited herein.

It may be of some interest to note that since this action was commenced in August 1960, the Arizona Legislature via § 36–1151 has made it clear that the furnishing of blood shall be construed as a service and not a sale. That section of the Arizona Revised Statutes reads as follows:

"The procurement, processing, distribution, or use of whole human blood, plasma, blood products and blood derivatives for the purpose of injecting or transfusing them into the human body shall be construed as to the transmission of serum hepatitis to be the rendition of this service by every person participating therein and shall not be construed to be a sale. Added Laws 1964, Ch. 83, § 1."

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.