532 A.2d 1081

Wayne A. ROBERTS, et al.

v.

**SUBURBAN HOSPITAL ASSOCIATION, INC.**

No. 201, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Nov. 9, 1987.

Martin H. Freeman, Bethesda (Albert D. Brault, Regina A. Casey and Brault, Graham, Scott & Brault, on the brief), Rockville, Md., for appellants.

Karen Shoos Lipton, Bruce M. Chadwick, Louis M. Bograd and Brendan Collins, Washington, D.C., for amicus curiae, American Red Cross.

S. Allan Adelman (Brett Weiss and Adelman & Haldeman, on the brief), Rockville, for appellee.

Argued before WILNER, ALPERT and WENNER, JJ.

WILNER, Judge.

In a complaint filed in the Circuit Court for Montgomery County, appellant contended that (1) he is a hemophiliac who, whenever injured or undergoing surgery, requires a transfusion of blood containing a procoagulant known as Factor VIII, (2) he has received all of his transfusions at Suburban Hospital, (3) in or about February, 1985, he was diagnosed as having acquired AIDS through the sale and transfusion of contaminated blood by Suburban Hospital, and (4) as a result, he has suffered and will continue to suffer injury and loss. He sued the hospital on three theories: strict liability (Count I), breach of implied warran-

ties of merchantability and fitness (Count II), and negligence (Count III).

Suburban's initial response to the complaint was a motion to dismiss it on the ground that appellant had failed to comply with the mandatory arbitration requirements then embodied in Md.Code Ann.Cts. & Jud.Proc. art., §§ 3–2A–01—3–2A–09. After a hearing in September, 1986, that motion was denied.

In December, 1986, appellant voluntarily dismissed Count III without prejudice. A month later, the court dismissed Counts I and II on the ground that they failed to state a claim upon which relief can be granted. Md. Rule 2–322(b)(2). The basis of that conclusion was that, under the circumstances pled, the transfusion of blood constituted the provision of a service rather than the sale of goods. The correctness of that determination is the issue raised in this appeal. We shall decide that issue but not in the context presented.

### (1) Procedure

Md.Code Ann.Cts. & Jud.Proc. art., §§ 3–2A–01—3–2A–09, as they stood when this action was filed, required that all claims "by a person against a health care provider for medical injury allegedly suffered by the person" in which damages in excess of the concurrent jurisdiction of the District Court are alleged must be submitted to arbitration before a Health Claims Arbitration panel as a condition precedent to any judicial action. As we indicated, Suburban Hospital's initial response to appellant's complaint was a motion to dismiss it for failure to comply with that condition.

The Circuit Court's denial of that motion was apparently based on its belief that Counts I and II, though clearly filed against a "health care provider" (see § 3–2A–01(e)), were not for a "medical injury." In opposing the motion to dismiss, appellant contended that those counts were grounded on the sale of a defective product—the blood—rather than on any negligence or deficiency in medical care.

■ This is a threshold issue that we must address, notwithstanding that Suburban has apparently abandoned its attempt to have the matter arbitrated and has raised no complaint about the court's ruling in this appeal. As stated by the Court of Appeals in *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860 (1982), "So strong is this public policy [requiring arbitration] that this Court will, *sua sponte*, vacate judgment and order an action dismissed where the litigants have not followed the special statutory procedure."

The Court of Appeals has dealt with the scope of the Health Claims Arbitration Act on three occasions in the past four years. In *Cannon v. McKen*, 296 Md. 27, 459 A.2d 196 (1983), a patient sued her dentist for injuries sustained when either an x-ray machine attached to the wall or part of the dental chair came loose and struck her. She claimed in strict liability, breach of warranty, and negligence. Responding to a motion raising preliminary objection based on her failure to submit the claim to arbitration, she argued that the claim was one of product liability and general negligence, that it did not arise from the rendering or failure to render health care, and that it was therefore not subject to mandatory arbitration.

Finding that, in enacting § 3–2A–01 *et seq.*, the Legislature intended to subject to arbitration "only those claims which the courts have traditionally viewed as professional malpractice," 296 Md. at 34, 459 A.2d 196, the Court concluded, at 36–37, 459 A.2d 196:

"We hold that the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill. Those claims for damages arising from a professional's failure to exercise due care in non-professional situations such as premises liability, slander, assault, etc., were not intended to be covered under the Act and should proceed in the usual tort claim manner."

Against this standard, the Court found the pleading before it lacking in a clear articulation of whether the injury arose from the breach of a professional or a nonprofessional duty and thus remanded the case to give the plaintiff an opportunity to clarify her pleading. In that regard, it observed in a footnote on p. 38, 459 A.2d 196: "We hasten to add that claims of strict liability and breach of warranty may not always be arbitrable; however, if such claims are related to and incorporate a negligence claim, as here, which may be arbitrable, then all counts will be arbitrable."

Two months after *Cannon v. McKen*, the Court decided *Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983). The infant plaintiff there alleged that, in the course of suturing her wound, the defendant doctors deliberately struck her and then abandoned her. She sued, without benefit of arbitration, for assault, negligence, and intentional infliction of emotional distress. After amending the *ad damnum* in the negligence count to seek less than $5,000 in an attempt to withdraw it from the ambit of the Act, the plaintiff contended that her action was for intentional tort rather than the breach of a professional duty. The Court concluded that the assault and intentional infliction counts were not, of themselves, arbitrable. Expanding upon the footnote in *Cannon*, however, and applying a notion of pendent jurisdiction, the Court held that if the negligence count was subject to arbitration, the other counts would have to be arbitrated as well. It remanded for further proceedings.

*Brown v. Rabbit*, 300 Md. 171, 476 A.2d 1167 (1984), was an obvious attempt to circumvent the Act. The plaintiff underwent a tubal ligation, from which she claimed to have contracted severe and irregular menstrual cramps. Rather than suing for traditional malpractice or lack of informed consent, she sued her doctor for breach of express and implied warranties. The Court had little difficulty affirming the dismissal of that complaint for failure to comply with the Act. It observed first, at 175, 476 A.2d 1167, that "the critical question is whether the claim is based on the rendering or failure to render health care and not on the

label placed on the claim," and then concluded, at 176, 476 A.2d 1167:

"In our view the claim here stems from the rendering of or the failure to render health care and is thus covered under the Act. This is clearly a claim involving the appellee's professional expertise and thus is subject to mandatory arbitration, notwithstanding the fact that the action is brought for breach of warranty. Only a physician in his professional capacity could make a representation such as was alleged here. The representations were directly related to medical treatment and the degree of success of such treatment. They arose from a doctor/patient relationship and as such appellant's claim is covered by the Act."

(Footnote omitted.) *See also Long v. Rothbaum,* 68 Md. App. 569, 514 A.2d 1223 (1986).

It is clear from *Oxtoby v. McGowan, supra,* 294 Md. 83, 447 A.2d 860 (1982), and from *Schwartz v. Lilly,* 53 Md. App. 318, 452 A.2d 1302 (1982), that, if the claim presented by appellant, however captioned, was subject to the Act, the Circuit Court was obliged to dismiss the complaint for failure to exhaust the prerequisite administrative remedy. The merits of the claim, including whether the pleading sufficed to state a cause of action, would not, in that circumstance, have properly been before the Circuit Court and indeed would not properly be before us.

When the court ruled on the preliminary motion to dismiss, the negligence count was still alive. That count charged the hospital with breaching a duty "to use ordinary and reasonable care in the selection, screening and testing of blood suppliers and donors for infectious diseases and viruses including the AIDS virus and to use ordinary and reasonable care to mitigate the possibility of AIDS being transmitted to patients receiving blood transfusions in the hospital."

There is no doubt in our mind that this stated a claim for breach of professional skill and duty and that it was

therefore subject to the Act. The strict liability and breach of warranty counts were certainly "related to" that count, which indeed incorporated by reference the averments in the other counts. Accordingly, the ruling, when made, was clearly wrong. As the case then stood, the whole complaint should have been dismissed.

It was not, of course, dismissed at that point or on that ground, and so, in the end the order denying the motion became an interlocutory one. By the time the ultimate judgment was entered, on the merits, the negligence count had been dismissed; at that point, the remaining two counts would not have been subject to dismissal simply by virtue of their relation to the negligence claim.

That does not mean that the issue of exhaustion was removed from the case; the "precondition" of the Act still existed. The focus merely shifted from the negligence claim and *its* effect on the complaint to the intrinsic nature of the two remaining counts: were they, on their own, subject to the arbitration requirements of the Act? That, we think, is the appropriate issue before us. We look at the case as it reaches us, not as it once was in the Circuit Court. *Cf. Smith Laboratories, Inc. v. Teuscher*, 310 Md. 676, 531 A.2d 300 (1987); *Nichols v. Wilson, supra*, 296 Md. 154, 460 A.2d 57 (1983).

In that regard, this is a most unusual case, for the threshold issue of arbitrability involves essentially the same legal theory as the issue of liability; the answer to one is the answer to the other. Suburban Hospital asserted that the claims were arbitrable because they all arose from the transfusion of blood, which, they contended, involved the rendering or failure to render health care rather than the sale of a product. That was also the basis for their motion to dismiss Counts I and II on the merits—that the transfusion "is in reality the provision of a service, not the sale of a product subject to claims sounding in strict liability and breach of warranty." Appellant's theory, on the other hand, both as to non-arbitrability and as to the merits, was that the action arose from the sale of a product, not the

provision of a medical service. If appellant were correct in his view, we would be obliged to reverse the judgment as being properly, but erroneously, entered; if the hospital is correct, as we believe it is, we would affirm the judgment dismissing Counts I and II, but on grounds other than those used by the Circuit Court.

### (2) Product or Service?

The implied warranties of merchantability and fitness provided for in Md.Code Ann.Comm. Law art., §§ 2–314 and 2–315 apply only to the sale of "goods," as that term is defined in § 2–105; and the doctrine of strict liability, as set forth in Restatement (Second) of Torts § 402A and adopted in *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976), applies only to the sale of a "product." Neither the implied warranties nor the notion of strict liability has been applied in Maryland to a transaction that is predominantly one of providing services.

It is not clear from appellant's complaint precisely when the transfusion of contaminated blood took place, although obviously it was before February, 1985. Had the transfusion occurred on or after July 1, 1986, the issue would have been controlled by statute, for, effective that day, the General Assembly rewrote Md.Code Ann. Health–Gen. art., § 18–402 to provide:

"A legally authorized person who obtains, processes, stores, distributes, or uses whole blood or any substance derived from blood for injection or transfusion into an individual for any purpose is performing a service and is not subject to:

(1) Strict liability in tort;

(2) The implied warranty of merchantability; or

(3) The implied warranty of fitness."

There being no indication that the Legislature intended this statute to be applied retroactively (see 1986 Md. Laws, ch. 259) and no other compelling reason to so apply it, we shall regard the new enactment as having prospective effect only and thus as not governing this case, especially

on the issue of arbitrability. *See WSSC v. Riverdale Fire Co.,* 308 Md. 556, 520 A.2d 1319 (1987).[1]

Prior to the 1986 amendments, § 18–402 provided:

"A person who obtains, processes, stores, distributes, or uses whole blood or any substance derived from blood for injection or transfusion into an individual for any purpose may not be held liable *for the virus of serum hepatitis* under:

(1) Strict liability in tort;

(2) The implied warranty of merchantability; or

(3) The implied warranty of fitness."

(Emphasis added.)

The limited application of the pre–1986 statute to serum hepatitis contamination was deliberate. The bill proposing that law (H.B. 761 (1971)) would have exempted all transfusions from the doctrine of strict liability and implied warranties and declared them generally to constitute the rendering of a service rather than a sale, but, during the legislative process, the General Assembly struck out that general language and restricted the exemption as noted. See 1971 Md. Laws, ch. 717.[2] It is clear, then, that the

---

1. Testimony in support of the bill and statements by the bill's sponsor, Delegate Saucrbrey, emphasized the immediate need to shield blood banks and hospitals from claims based on strict liability and implied warranties by plaintiffs who contracted AIDS from blood transfusions. Appellee and the American Red Cross, in its amicus brief, contend that these statements evidence the General Assembly's intent to have the bill applied retroactively. We do not agree. There is absolutely no indication from the Legislature of an intent to have the 1986 enactment apply retroactively. If the Legislature had such an intent, it could have expressed that intent in the law itself. *See WSSC, supra,* 308 Md. at 568, 520 A.2d 1319, and cases cited as examples therein. Absent such an expressed intent, the legislation is "presumed to operate prospectively." *Id. See also Kastendike v. Baltimore Ass'n,* 267 Md. 389, 395–96, 297 A.2d 745 (1972).

2. The amendments were as follows (capitals representing language added to the bill, strike-outs indicating language deleted):

"~~Neither~~ AS TO THE VIRUS OF SERUM HEPATITIS, NEITHER strict liability in tort nor the implied warranties of merchantability and fitness shall be applicable to the procurement, processing,

pre–1986 statute does not govern this case, at least not directly. The hospital's liability, if any, must be determined as a matter of Maryland common law.

Although, as in Maryland, the issue is now controlled by statute throughout the country,[3] many of those statutes are

storage, distribution, and/or use of whole blood, plasma, blood products, and blood derivatives for the use of injecting or transfusing the same or any of them into the human body for any purpose whatsoever. ~~Such procurement, processing, storage, distribution, and/or use constitutes the rendering of a service by every person, firm, or corporation participating therein, whether or not any remuneration is paid therefor, and does not constitute a sale.~~"

**3.** It appears that 48 states have a statute governing the issue in one · way or another. Some specifically declare a transfusion to be a service; others simply exclude liability except for negligence; others limit liability only if the defect cannot be detected. Ala. Code § 7–2–314(4) (1984); Alaska Stat. § 45.02.316(e) (1986); Ark. Stat. Ann. § 82–1608 (1976); Cal. Health & Safety Code § 1606 (Deering 1982); Colo.Rev.Stat. § 13–22–104(2) (1973); Conn.Gen.Stat.Ann. § 19a–280 (West Supp.1986); Del. Code Ann. tit. 6, § 2–316(5) (1975); Fla.Stat.Ann. § 672.316(5) (West.Supp.1987); Ga.Code Ann. § 11–2–316(5) (1982); Idaho Code § 39–3702 (Supp.1987); Ill.Ann.Stat. ch. 111½ para. 5102 (Smith–Hurd Supp.1987); Ind.Code Ann. § 16–8–7–2 (Burns 1983); Iowa Code Ann. § 142A.8 (West.Supp.1987); Kan.Stat. Ann. § 65–3701 (1985); Ky.Rev.Stat.Ann. § 139.125 (Baldwin 1983); La.Rev.Stat.Ann. § 9:2797 (West.Supp.1987); Me.Rev.Stat.Ann. tit. 11, § 2–108 (Supp.1986); Md. Health–Gen.Code Ann. § 18–402 (Supp. 1987); Mass.Ann.Laws ch. 106, § 2–316(5) (Law.Co-op.1987); Mich. Stat.Ann. § 14.15 (9121) (2) [333.9121(2)] (Callaghan Supp.1987–88); Minn.Stat.Ann. § 525.928 (West 1975); Miss. Code Ann. § 41–41–1 (Supp.1987); Mo.Ann.Stat. § 431.069 (Vernon Supp.1987); Mont.Code Ann. § 50–33–102 to 104 (1985); Neb.Rev.Stat. § 71–4001 (1986); Nev.Rev.Stat.Ann. § 460.010 (Michie 1986); N.H.Rev.Stat.Ann. § 507:8–b (1983); N.Y.Pub.Health Law § 580(4) (Consol.1976); N.C. Gen.Stat. § 130A–410 (1986); N.D.Cent.Code § 41–02–33(3)(d) (1983); Ohio Rev. Code Ann. § 2108.11 (Anderson 1976); Okla.Stat.Ann. tit. 63, § 2151 (West 1984); Or.Rev.Stat. § 97.300 (1984); 42 Pa.Cons.Stat. Ann. § 8333 (Purdon 1982); R.I.Gen.Laws § 23–17–30 (Supp.1986); S.C.Code Ann. § 44–43–10 (Law. Co-op.1985); Tenn. Code Ann. § 47–2–316(5) (1979); Tex.Civ.Prac. & Rem.Code Ann. § 77.003 (Vernon 1986); Utah Code Ann. § 26–31–1 (1984); Va. Code Ann. § 32.1–297 (1985); W.Va.Code § 16–23–1 (1985); Wis.Stat.Ann. § 146.31(2) (West Supp.1987); Wyo.Stat. § 35–5–110 (1977). It appears that five States exclude liability only as to certain types of contamination. Ariz.Rev.Stat.Ann. § 36–1151 (1986) (hepatitis); Haw.Rev.Stat. § 325–91 (1985) (no liability for transmission of hepatitis as long as hepatitis remains undiscoverable); N.M.Stat.Ann.

of fairly recent origin, and there is, therefore, a considerable body of case law discussing the issue under common law principles. Nearly all of the contamination cases arose before the discovery of AIDS and its methods of transmittal; they mostly concern hepatitis contamination.[4]

The seminal case in this area is *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954). The plaintiff was a patient at the defendant hospital receiving general medical care. As part of that care, she received a transfusion of blood which she claimed was contaminated and from which she contracted hepatitis. Emphasizing that the hospital had made a separate charge on its bill for the transfusion, the plaintiff asserted that the transfusion constituted the sale of goods subject to, and in breach of, the implied warranties of fitness and merchantability. No claim of strict liability was made.

In a 4–3 decision, the New York Court of Appeals rejected the notion that a blood transfusion was the sale of goods subject to the implied warranties. It viewed the contractual relationship between hospital and patient as involving a broad spectrum of medical care—"the patient bargains for, and the hospital agrees to make available, the human skill and physical material of medical science to the end that the patient's health be restored." *Id.*, 123 N.E.2d at 794. Such a contract, said the majority, "is clearly one for services, and, just as clearly, is not divisible." *Id.* On that premise, the Court continued, at 795:

---

§ 24–10–5 (1986) (hepatitis); S.D. Codified Laws Ann. § 57A–2–315.1 (Supp.1987) (no liability for certain infectious diseases which cannot be detected by standardized testing); Wash.Rev.Code Ann. § 70.54.120 (Supp.1987) (no liability for hepatitis, malaria, or AIDS as long as records of donor suitability maintained). As far as we can tell, only New Jersey, Vermont, and the District of Columbia have failed to enact a statute in this area.

**4.** We do not include in this discussion cases involving mismatched blood, i.e., transfusing into a patient blood of a type that is incompatible with his own.

"The supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities in an endeavor to restore plaintiff's health. It was not for blood—or iodine or bandages—for which plaintiff bargained, but the wherewithal of the hospital staff and the availability of hospital facilities to provide whatever medical treatment was considered advisable. The conclusion is evident that the furnishing of blood was only an incidental and very secondary adjunct to the services performed by the hospital and, therefore, was not within the provisions of the Sales Act."

Despite some criticism, primarily among commentators,[5] the *Perlmutter* view has been followed, at least with respect to suits against hospitals based on the actual transfusion of blood, by nearly every State court that has considered the matter.[6] Some courts have drawn a distinction

---

**5.** See discussion in *Burton v. Artery Company*, 279 Md. 94, 102–03, 367 A.2d 935 (1977); also *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970); *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); Williams, *Blood Transfusions and AIDS: A Legal Perspective*, 32 Med. Trial Tech.Q. 267 (1986); Recent Cases, 69 Harv.L.Rev. 391 (1955); Comment, *Transfusion–Associated Acquired Immunodeficiency Syndrome (AIDS): Blood Bank Liability?*, 16 U.Balt.L.Rev. 81 (1986); Recent Cases, 103 U.Pa.L. Rev. 833 (1955).

**6.** *St. Luke's Hospital v. Schmaltz*, 188 Colo. 353, 534 P.2d 781 (1975); *Fisher v. Sibley Memorial Hospital*, 403 A.2d 1130 (D.C.1979); *White v. Sarasota County Public Hospital Board*, 206 So.2d 19 (Fla.Dist.Ct.App.), *cert. denied* 211 So.2d 215 (Fla.1968); *Hoder v. Sayet*, 196 So.2d 205 (Fla.Dist.Ct.App.1967); *Lovett v. Emory University, Inc.*, 116 Ga.App. 277, 156 S.E.2d 923 (1967); *Weber v. Charity Hosp. of La. at New Orleans*, 487 So.2d 148 (La.Ct.App.1986); *Dibblee v. Dr. W.H. Groves Latter-Day Saints Hospital*, 12 Utah 2d 241, 364 P.2d 1085 (1961); *Foster v. Memorial Hosp. Ass'n of Charleston*, 159 W.Va. 147, 219 S.E.2d 916 (1975); *Koenig v. Milwaukee Blood Center, Inc.*, 23 Wis.2d 324, 127 N.W.2d 50 (1964). *Cf. Whitehurst v. American National Red Cross*, 1 Ariz.App. 326, 402 P.2d 584 (1965); *Balkowitsch v. Minneapolis War Mem. Blood Bank*, 270 Minn. 151, 132 N.W.2d 805 (1965); *McDaniel v. Baptist Memorial Hospital*, 469 F.2d 230 (6th Cir.1972). *See also Sloneker v. St. Joseph's Hospital*, 233 F.Supp. 105 (D.Colo. 1964) (applying Colorado law).

between hospitals and blood banks and have allowed strict liability or breach of warranty actions against the latter on the theory that they are merely collectors and distributors (and thus sellers) of blood rather than providers of medical service.[7] But, so far as we can tell, only three courts have definitively rejected the *Perlmutter* view in an action against a hospital based on the transfusion of contaminated blood.

The most blatant rejection came in *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970), where the Illinois Supreme Court declared the *Perlmutter* view "unrealistic," and adopted instead the rationale that had been used in actions against blood banks. At 901, the Court opined:

"Although it may be conceded that a blood bank's *principal function* is to stockpile blood for dispensation to various institutions, whereas a hospital ordinarily provides blood for transfusion purposes only ancillarily and as a part of its total services, both entities are clearly within the distribution chain of the product involved."

(Emphasis in the original.)

The *Cunningham* analysis has not been followed to a similar conclusion anywhere else; indeed, it was promptly

---

7. *Hansen v. Mercy Hospital, Denver*, 40 Colo.App. 17, 570 P.2d 1309 (1977), aff'd sub nom *Belle Bonfils Memorial Blood Bank v. Hansen*, 195 Colo. 529, 579 P.2d 1158 (Colo.1978); *Russell v. Community Blood Bank, Inc.*, 185 So.2d 749 (Fla.Dist.Ct.App.1966), aff'd as modified 196 So.2d 115 (Fla.1967); *Hoder v. Sayet*, 196 So.2d 205 (Fla.Dist.Ct.App. 1967); *Weber v. Charity Hosp. of La. at New Orleans*, 487 So.2d 148 (La.Ct.App.1986). Contra *Kozup v. Georgetown University*, 663 F.Supp. 1048 (D.D.C.1987); *Whitehurst v. American National Red Cross*, 1 Ariz.App. 326, 402 P.2d 584 (1965); *Balkowitsch v. Minneapolis War Mem. Blood Bank*, 270 Minn. 151, 805 (1965).

It should be noted that in the three jurisdictions cited which make the distinction between blood banks and hospitals the respective legislatures have, at least in part, overruled these decisions by statute. See Colo.Rev.Stat. § 13–22–104 (1973); Fla.Stat. § 672.316(5) (West Supp.1987) (implied warranties "are not applicable as to a defect that cannot be detected or removed by a reasonable use of scientific procedures or techniques"); La.Rev.Stat.Ann. § 9:2797 (West.Supp. 1987).

overturned by the Illinois legislature and is no longer the law even in Illinois. *See Glass v. Ingalls Memorial Hospital,* 32 Ill.App.3d 237, 336 N.E.2d 495 (1975).

In two other States—Pennsylvania and New Jersey—the courts have departed from *Perlmutter* in favor of other tests. In *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970), the Court noted that, by prior Pennsylvania case law, implied warranties under the Uniform Commercial Code had been applied to "non-sale" transactions and that their application to blood transfusions did not, therefore, depend on whether a transfusion was the sale of goods as opposed to a service. It left open, however, whether those warranties would apply with equal force to a service as to a sale as well as whether some other defense to liability might be applicable. In short, *Hoffman* seems to be based on a rather expansive view of the Commercial Code which has not found favor in Maryland.[8] In *Burton v. Artery Company,* 279 Md. 94, 367 A.2d 935 (1977), the Court of Appeals made clear that U.C.C. implied warranties applied only to the sale of goods and that a contract involving both the sale of goods and the provision of service would be subject to them only if the sale was the predominant factor, i.e., that "the thrust, the purpose, reasonably stated, is a transaction of sale with labor incidentally involved." *Id.,* 114–15, 367 A.2d 935. *Burton,* it seems, would preclude our adopting the *Hoffman* analysis.[9]

New Jersey has also experimented with a different view. In at least two cases, New Jersey trial courts appeared to

---

**8.** Nor did the *Hoffman* view find favor with the Pennsylvania legislature. After the decision was handed down, the legislature effectively overruled *Hoffman* by enacting what is now 42 Pa.Con.Stat.Ann. § 8333 (Purdon 1982), which specifically excludes blood transfusions from the doctrines of strict liability and all implied warranties. *See Hekeler v. St. Margaret Memorial Hospital,* 74 Pa. D & C 2d 568 (1976).

**9.** In that regard, we note that the *Burton* Court cited *Hoffman* in its discussion but opted for the "predominant purpose" approach noted rather than a direct expansion of the warranties to non-sale transactions.

reject the *Perlmutter* analysis, although in the second case the court used a broader public policy ground for concluding that a blood transfusion was not subject to strict liability or implied warranties. *See Magrine v. Krasnica,* 94 N.J.Super. 228, 227 A.2d 539 (1967); *Jackson v. Muhlenberg Hosp.,* 96 N.J.Super. 314, 232 A.2d 879 (1967). In the *Jackson* case, the New Jersey Supreme Court vacated the trial court's judgment, which had been entered on motions for summary judgment, and remanded the case for trial. *Jackson v. Muhlenberg Hospital,* 53 N.J. 138, 249 A.2d 65 (1969). It appears that New Jersey continues to reject strict liability and implied warranty as a basis of liability, but on public policy grounds rather than on a *Perlmutter* theory. *See Brody v. Overlook Hospital,* 66 N.J. 448, 332 A.2d 596 (1975); *Moore v. Underwood Memorial Hospital,* 147 N.J.Super. 252, 371 A.2d 105 (1977).

We are persuaded to follow the *Perlmutter* theory and not to carve out a distinction, as we are urged to do, between the case of a plaintiff who receives a transfusion as part of some more general medical care, as in *Perlmutter,* and one who, like appellant, receives only the transfusion from the hospital. We adopt this view for four reasons.

First, it appears to be the majority view throughout the country, even by judicial decision, and certainly comports with the actual law—now mostly statutory—in nearly every State. Second, notwithstanding the criticism of it, it appears to us to be a sounder rule than the alternatives proposed. A transfusion is not just a sale of blood which the patient takes home in a package. The transfusion of the blood—the injecting of it into the patient's bloodstream—is what he really needs and pays for, and that involves the application of medical skill. It would be artificial at best, and probably inaccurate, to conclude as a matter of law that the product predominates over the service. Third, although the 1971 statute applied only to hepatitis contamination, it would be anomalous to apply or not apply implied warranties or strict liability based upon

the type of infection one gets. To draw from Gertrude Stein, a blood transfusion is a blood transfusion is a blood transfusion is a blood transfusion. If the blood is contaminated with an infectious virus, it is just as unmerchantable and unfit and unreasonably dangerous whether the virus produces hepatitis or AIDS; and, if the Legislature, as a matter of declared public policy, has decided to immunize hospitals and blood banks from implied warranty and strict liability in the one case, it makes little sense for the courts, given a choice, to impose liability in the other. Finally, and essentially for the same reason, it makes little sense to us to try to draw distinctions based on whether the patient has received some other service from the hospital. That too can be terribly artificial.

For these reasons, we conclude that Counts I and II arose from the provision of a service—i.e., the rendering of health care—rather than the sale of a product. It follows, then, that the complaint should have been dismissed for failure to follow the required administrative remedy.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.