RHONE–POULENC RORER INC.
and Armour Pharmaceutical
Company, Plaintiffs,

v.

The HOME INDEMNITY COMPANY,
Defendant and Third–Party
Plaintiff,

v.

AETNA CASUALTY & SURETY
COMPANY, et al., Third–
Party Defendants,

and

Revlon, Inc., Third–Party Defendant
and Fourth–Party Plaintiff,

v.

CITY INSURANCE COMPANY, Pacific
Employers Insurance Company, et
al., Fourth–Party Defendants.

Civ. A. No. 88–9752.

United States District Court,
E.D. Pennsylvania.

Aug. 3, 1993.

Stephen J. Mathes, William R. Herman, Hoyle, Morris & Kerr, Philadelphia, PA, for Rhone-Poulenc Rorer, Inc. and Armour Pharmaceutical Co.

Louis E. Bricklin, Illene G. Greenberg, Bennett, Bricklin and Saltzburg, Philadelphia, PA, for John Barrington Hume & Insco, Ltd.

Jeffrey B. Albert, Wendy Fleishman, Stephanie Resnick, Timothy D. Mara, Philadelphia, PA, for Home Indem. Co.

Stephen A. Cozen, Susan M. Danielski, Richard C. Bennett, Cozen and O'Connor, Philadelphia, PA, for Revlon, Inc., and Pantry Pride, Inc.

Joseph M. Oberlies, Connor and Weber, P.C., Philadelphia, PA, for American Centenial Ins. Co.

Mark A. Dombroff, John K. Henderson, Jr., Katten, Muchin, Zavis & Dombroff, Washington, DC, B. Alan Dash, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, PA, for Birmingham Fire Ins. Co., AIU Ins. Co., New Hampshire Ins. Co., Granite State Ins. Co., National Union Ins. Co., Lexington Ins. Co., The Ins. Co. of the State of Pennsylvania.

Edward M. Dunham, Jr., Miller, Dunham, Doering & Munson, Philadelphia, PA, for Aetna Cas. & Sur. Ins.

Dennis R. Suplee, Ronald P. Schiller, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for North Star Reinsurance Corp.

William C. Foster, Gerard F. Lipski, Philadelphia, PA, for Liberty Mut. Ins. Co.

Wayne Partenheimer, Philadelphia, PA, for Home Ins. Co., City Ins. Co.

B. Alan Dash, H. Marc Tepper, Mary J. Davis, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, PA, for AIU Ins. Co., Birmingham Fire Ins. Co., Granite State Ins. Co., Lexington Ins. Co., Nat. Union Ins. Co., New Hampshire Ins. Co., Illinois Nat. Ins. Co.

James W. Christie, Philadelphia, PA, for Home Ins. Co., City Ins. Co.

Daniel T. McWilliams, McWilliams and Mintzer, P.C., Philadelphia, PA, for Hartford Ins. Co., Twin City Ins. Co., First State Ins. Co., New England Reinsurance and New England Ins. Co.

George D. Sheehan, Jr., Sweeney, Sheehan & Spencer, Philadelphia, PA, for Old Republic Ins. Co., Puritan Ins. Co.

Thomas C. DeLorenzo, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Gibraltar Cas. Co., Prudential Reinsurance Co.

Douglas Evan Ress, Kaufman, Coren & Ress, Philadelphia, PA, for Central Nat'l Ins. Co. of Omaha Motor Vehicle Cas. Com.

Stuart C. Levine, Ford Marrin Esposito & Witmeyer, New York City, William G. Scarborough, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Continental Cas. Co.

B. Alan Dash, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, PA, for Illinois Nat. Ins. Co.

George D. Sheehan, Jr., Sweeney, Sheehan & Spencer, Philadelphia, PA, for Manhattan Fire and Marine Ins. Co.

Bonnie Brigance Leadbetter, Fineman & Bach, P.C., Philadelphia, PA, for National Cas. Ins. Co.

Susan E. Danielson, Fox, Rothschild, O'Brien and Frankel, Roy L. Reardon, James P. Barrett, Robert F. Cusumano, Mary Kay Vyskocil, Simpson, Thacher & Bartlett, New York City, for Home Indem. Ins. Co.

David F. Abernethy, Drinker Biddle & Reath, Philadelphia, PA, for Intern. Ins. Co.

## MEMORANDUM

JAMES McGIRR KELLY, District Judge.

Presently before the court are Defendant, Third–Party Plaintiff and Counterclaim The Home Indemnity Company's ("The Home") Motion for Summary Judgment against Plaintiffs Rhone–Poulenc Rorer, Inc. ("Rorer") and Armour Pharmaceutical Company ("Armour") (collectively "Plaintiffs"), Fourth–Party Defendant Pacific Employers Insurance Company's ("PEIC") Motion for Summary Judgment as to Policy No. XMO 01 1108. The parties have extensively briefed these matters and a hearing was held on July 19, 1993. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 as the parties are in complete diversity and the amount in controversy is in excess of $50,000.00.

Plaintiffs seek declaratory relief as to the obligations of its insurance carriers, in connection with the claims filed by hemophiliacs (the "underlying claims") resulting from their use of Factor VIII manufactured and sold by Armour as Factorate™ and H.T. Factorate™. The Factor VIII Concentrates were contaminated with HIV resulting in the transmission of AIDS in many hemophiliacs.

The Home and PEIC contend that Rorer did not purchase insurance for which it now seeks coverage. The policies excluded coverage for products and operations. Two exclusionary clauses were included in the policies, the "products hazard" and the "completed operations". Each exclusion operates to bar coverage for the underlying AIDS claims.

In response, Plaintiffs assert that the underlying AIDS claims are not precluded under the policies. Plaintiffs cite the Pennsylvania Blood Shield Statute in support of their position. Although the Blood Shield Statute does not specifically define blood and blood products as "services", it does restrict claims arising under products liability. Plaintiffs surmise that the underlying AIDS claims do not fit within the products hazard exclusion. In addition, the completed operations exclusion is inapplicable to businesses engaged in manufacturing.

*Applicable Law*

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court is required, in resolving a motion for summary judgment pursuant to Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the non-movant's favor. *See id.* at 255, 106 S.Ct. at 2513.

While the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, the party opposing the motion must come forward with "more than a mere scintilla of evidence in its favor" and " 'cannot simply reassert factually unsupported allegations contained in its pleading.' " *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 and *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53).

Pennsylvania law applies the basic principles of contract interpretation to insurance policies. *Little v. MGIC Indemnity Corp.,* 836 F.2d 789, 793 (3d Cir.1987). If the policy language is clear and unambiguous, the court must enforce that language. *Id.,* (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). A policy susceptible to more than one interpretation is ambiguous. *Id.* Courts construe ambiguities in insurance contracts against the insurers. *Id.; Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985). The same principles apply where the insured is a commercial entity. *Id.*

*Discussion*

The parties dispute the applicability of two contractual provisions, the "products hazard" and the "completed operations", to the underlying HIV claims. The court addresses each of these provisions. Initially, it shall be noted that the court finds the insurance contract to be unambiguous.

*Products Hazard Exclusion*

■ The Home and PEIC insist that the underlying claims fall within the products hazard exclusion. The policies define products hazard exclusion as

> bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

The Home's 1986 CGL Policy.[1]

The term "named insured's products" is defined as "goods or products, sold, handled or distributed by the named insured." *Id.*

Plaintiffs proclaim that Pennsylvania Blood Shield Statute precludes strict liability in blood claims. They further interpret the statute as declaring all blood and blood products to be a service. Accordingly, the products hazard exclusion is not applicable to services.

The relevant statute provides:

---

1. PEIC incorporates the language of The Home's CGL policy defining the term "products hazard". *See* Reply Memorandum of Law in Further Support of Fourth–Party Defendant Pacific Employers Insurance Company's Motion for Summary Judgment as to Policy No. XMO 01 1108 at 12.

No person shall be held liable for death, disease or injury resulting from lawful transfusion of blood, blood components or plasma derivatives, or from the lawful transplantation or insertion of tissue, bone or organs, except upon showing of negligence on the part of such person. Specifically excluded hereunder is any liability by reason of any rule of strict liability or implied warranty not expressly undertaken by the party to be charged.

42 Pa.C.S.A. § 8333.

Many blood shield statutes of other states, declare blood or blood products a service. The Pennsylvania Blood Shield Statute is silent on the issue of "service" or "product". *See* Illinois Blood Liability Act, Ill.Rev.Stat. ch. 111½, ¶ 5101, et seq. (1985); Minn.Stat. § 525.928; Hawaii Revised Statutes § 327–51 (1985). Lacking that language, we believe the legislature has not spoken on the issue. The classification of blood and blood products as a "service" or a "product" has not yet been addressed by the Pennsylvania Supreme Court. In the absence of precedence, this court must decide the issue in accordance with what we predict Pennsylvania Supreme Court would conclude had this issue been before it.

In the absence of case law and legislative history, this court assumes the intent of the statute is in conformity with blood shield statutes of other states. Numerous jurisdictions have enacted similar blood shield statutes. *See Poole v. Alpha Therapeutic Corp.,* 698 F.Supp. 1367, 1369 (N.D.Ill.1988) (discussing Illinois Blood Liability Act, Ill.Rev. Stat. ch. 111½, ¶ 5101, et seq. (1985)); *Doe v. Travenol Laboratories, Inc.,* 698 F.Supp. 780, 782 (D.Minn.1988) (interprets Minn.Stat. § 525.928); *Smith v. Cutter Biological, Inc.,* 72 Haw. 416, 823 P.2d 717, 730 (1991) (discussing Hawaii Revised Statutes § 327–51 (1985)). While the language of the statutes vary, almost all insulate blood service providers from claims of strict liability. *See Poole v. Alpha Therapeutic Corp.,* supra, ( [t]he Act limits legal liability to negligence and wilful misconduct); *McKee v. Miles Laboratories, Inc.,* 675 F.Supp. 1060 (E.D.Ky.1987), *aff'd,* 866 F.2d 219 (6th Cir.1989) (plaintiffs claims against defendant arising under strict liability should be dismissed).

The various blood statutes were enacted to guard against the risks involved in manufacturing blood products. Blood processors were not able to insure that the blood supplies were free from diseases transmissible through blood. There was a fear that the threat of liability without fault would drive suppliers out of the business of providing these products. In response, states enacted the statutes to ensure that certain medical services remain available to the public. *Smith v. Cutter Biological, Inc.,* 823 P.2d at 732 (finding the purpose of the statute to be consistent with the policies behind other states blood shield statutes) (citing *Zichichi v. Middlesex Memorial Hospital,* 204 Conn. 399, 528 A.2d 805, 810 (1987) (statutes enacted to ensure that citizens have available to them such necessary medical services)).

In the early 1980's, blood processors were unable to detect HIV in the blood supply. Factor VIII Concentrate is a necessary product allowing hemophiliacs to enjoy an improved quality of life. Imposing the cost of the inherent risk on the manufacturers would inevitably result in decrease in availability of Factor VIII Concentrate. Despite the catastrophic effect of AIDS due to the transmission of HIV through Factor VIII Concentrate, the majority of courts have protected manufacturers of these blood products under the blood shield statutes. *Poole v. Alpha Therapeutic Corp.,* supra; *Doe v. Travenol Laboratories, Inc.,* supra; *Smith v. Cutter Biological, Inc.,* supra; *Roberts v. Suburban Hospital,* 73 Md.App. 1, 532 A.2d 1081 (1987).

Applying the products hazard exclusion to claims resulting from use of Factorate™ and H.T. Factorate™, would be contrary to the intent of Pennsylvania's Blood Shield Statute. Therefore, in consistency with the intent of the statute and what this court predicts the Supreme Court of Pennsylvania would hold we find Factorate™ and H.T. Factorate™ to be services not excluded under Products Hazard.

*Completed Operations Exclusion*

■ Home and PEIC contend that the underlying claims are barred by the complet-

ed operations exclusion. The completed operations exclusion provides:

> bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named Rorer. "Operations" includes materials, parts or equipment furnished in connection therewith.
>
> Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
>
> (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
>
> (3) when a portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

The Homes 1986 CGL Policy.[2]

Completed operation clauses were constructed with the intent to protect businesses from the ever growing products liability law. *Friestad v. Travelers Indemnity Company*, 260 Pa.Super. 178, 393 A.2d 1212, 1213 (1978). It is seen as the counterpart of products hazard coverage for a service company. *Federal Kemper Insurance Co. v. Jones*, 777 F.Supp. 405, 412 (M.D.Pa.1991). The provision is intended to apply to work performed on other's premises, such as construction or maintenance work. *Id.; American Red Cross v. Travelers Indemnity Company*, 816 F.Supp. 755, 760 (D.D.C.1993); *see Pacific Indemnity Company v. Linn*, supra, at 764 (3d Cir.1985) (citing *Friestad v. Travelers Indemnity Company*, supra, 393 A.2d at 1213.). Accordingly, the court finds the

completed operations exclusion inapplicable to the underlying claims.

### *Conclusion*

Neither the products hazard nor the completed operations exclusions apply to the underlying claims. Therefore, summary judgment shall be denied against The Home and PEIC.

An appropriate order follows.

### *ORDER*

AND NOW, this 2nd day of August, 1993, in consideration of Defendant, Third–Party Plaintiff and Counterclaim The Home Indemnity Company's ("The Home") Motion for Summary Judgment against Plaintiffs Rhone–Poulenc Rorer, Inc. and Armour Pharmaceutical Company (collectively "Plaintiffs"), Fourth–Party Defendant Pacific Employers Insurance Company's ("PEIC") Motion for Summary Judgment as to Policy No. XMO 01 1108, Responses thereto, Memorandum of law; it is hereby ORDERED that:

(1) The Home Indemnity Company's Motion for Summary Judgment against Plaintiffs is **DENIED.**

(2) PEIC's Motion for Summary Judgment as to Policy No. XMO 01 1108 against Plaintiffs is **DENIED.**

---

2. PEIC incorporates the language of The Home's CGL policy defining the term "completed operations". *See* Reply Memorandum of Law in Further Support of Fourth–Party Defendant Pacific Employers Insurance Company's Motion for Summary Judgment as to Policy No. XMO 01 1108 at 15.